In re Armando J. SOLIS, Debtor.

Bankruptcy No. 90 B 12237 (FGC).

United States Bankruptcy Court,
S.D. New York.

Feb. 14, 1992.

**122**

A. LeCrichia, Mujica & Goodman, New York City, for debtor Armando J. Solis.

E. Smith, Asst. U.S. Atty., Office of Otto G. Obermaier, U.S. Atty., S.D.N.Y., for Internal Revenue Service (IRS).

MEMORANDUM OF DECISION ON AWARD OF DAMAGES FOR VIOLA-TION OF STAY BY IRS

FRANCIS G. CONRAD, Bankruptcy Judge.*

Debtor, a physician, seeks[1] an award of compensatory and punitive damages against IRS for willful violation of the au-tomatic stay provisions of 11 U.S.C. § 362(a), as a result of two abortive postpe-tition attempts by IRS to collect delinquent tax liabilities. That both attempts did in-deed violate the automatic stay is undisput-ed. IRS strongly denies, however, that the violations were either willful, an essential prerequisite to an award of damages under § 362(h), or malicious, a necessary predi-cate for punitive damages. IRS also ar-gues that the doctrine of sovereign immuni-ty shields it from liability even for willful and malicious violations. We hold that sov-ereign immunity is waived by § 106, find that IRS violations of the automatic stay were willful, and, thus, will award Debtor reasonable attorneys' fees and costs. Debtor's request for punitive damages will be denied, however, because we were pro-vided with no evidence of malice or bad faith.

## FACTUAL BACKGROUND

Debtor filed a voluntary petition seeking protection under Chapter 13 of the Bank-ruptcy Code on July 17, 1990, listing IRS as a creditor. The caption of the petition list-ed Debtor's Social Security number, but omitted any reference to two employer identification numbers (EIN) under which Debtor has operated a medical practice.

IRS Revenue Officer L. Rossi (Rossi) was responsible for prepetition collection of delinquent Federal taxes from Debtor. IRS concedes that, prepetition, Rossi knew Debtor owed delinquent Federal income taxes under the Social Security number, as well as Federal withholding and FICA lia-bilities under EIN # 13–3350925. IRS also acknowledges that Rossi learned about the second number, EIN # 11–2571288, on April 3, 1990, after entering a query on the IRS computer system for the express pur-pose of determining whether Debtor had ever operated under any other EIN. That query disclosed the existence of the second

---

* Sitting by Special Designation.

1. Our subject matter jurisdiction over this mat-ter arises under 28 U.S.C. § 1334(b) and the "Standing Order of Referral of Cases to Bank-ruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core matter under 28 U.S.C. § 157(b)(2)(A). This Memorandum of Decision constitutes find-ings of fact and conclusions of law under F.R.Civ.P. 52, as made applicable to this pro-ceeding by F.R.Bkrtcy.P. 7052.

number, and the fact that no tax liabilities had then been assessed under it.

About twelve days prior to Debtor's Chapter 13 filing, IRS seized Debtor's professional medical offices. On July 30, 1990, IRS received the "Order for Meeting Of Creditors, Combined with Notice Thereof of an Automatic Stay" for Debtor's bankruptcy. Based upon this information, the IRS Technical Unit made two computer entries, on Sept. 2, 1990 and Sept. 21, 1990, to prevent postpetition collection activity. The first computer entry was intended to prevent collection of Federal tax liabilities associated with Debtor's Social Security number. The second entry was to prevent collection of tax liabilities for EIN # 13-3350925.

IRS was aware, however, of Debtor's filing even before receiving the "Order for Meeting of Creditors." On July 23, 1990, Rossi typed a memorandum to the Advisory Unit of Special Procedures Function, reporting the bankruptcy filing and describing the tax liabilities associated with Debtor's Social Security number and EIN # 13-3350925. Rossi's memo also noted that seizure had been authorized under two separate writs, one for Debtor's sole proprietorship, "and another, under Ein:13-3350925, to seize the P.C. [professional corporation] (at [the] same location)." Rossi Memorandum.

[I] {p}resented both writs to Dr. Solis, as [I] was uncertain how he was operating. I was informed that the P.C. had ceased operations in 1989, so I proceeded with seizure under the Writ for S.P. [sole proprietorship].

Id. That same day, Rossi wrote by hand a letter to the Insolvency Unit disclosing the existence of Debtor's second EIN number. Thus, we find that IRS had knowledge, prepetition and postpetition, of both EIN numbers.

IRS filed a proof of claim totaling $35,-412.20 on Sept. 17, 1990, for Federal in-

come taxes due for 1986 and 1987. The amount claimed included only tax liabilities incurred under Debtor's Social Security number. Debtor filed an amended voluntary petition on September 21, 1990, again listing only the Social Security number. On October 1, 1990, IRS filed an amended proof of claim for $70,124.94, which covered 1986–1989 and included liabilities owed in connection with both Debtor's Social Security number and EIN # 13–3350925.[2]

IRS violated the automatic stay for the first time on Oct. 11, 1990, when, without notice to Debtor, it levied on Debtor's Chemical Bank account. The levy, in the amount of $3,517.70, named Debtor personally, but was for taxes owed under the second number, EIN # 11–2571288.[3] When Chemical Bank refused to disclose the identity of the levying creditor, Debtor moved by "Order to Show Cause" to compel the bank to identify the source of the levy, and to enjoin the Bank from releasing any property of the Debtor. IRS received a copy of the "Order to Show Cause," signed by Judge Prudence B. Abram, on October 16, 1990. On October 17, 1990, the Technical Unit directed that the levy be released by the IRS automated collection system. Debtor's funds remained frozen until October 22, 1990, when IRS issued a manually-generated "Release of Levy." No funds were received by IRS as a result of the levy.

During the week of October 29, 1990, the Technical Unit directed that the IRS computer system be programmed to prevent any further collection activity against the second EIN number. Nevertheless, a second violation of the automatic stay occurred on November 3, 1990, when the IRS' Holtsville, New York, Service Center issued a "Notice of Intent to Levy," again for liabilities under the second EIN number. The IRS office of District Counsel notified the Technical Unit of that action on November 7, 1990. That very day, the

---

2. We make no finding as to whether this claim, which apparently involves both individual and corporate liabilities, is proper in this Chapter 13 case.

3. We received no information about how or when IRS determined that delinquent taxes were in fact owed under the second number, which had no outstanding liabilities on April 30, 1990, the date of Rossi's computer query.

Technical Unit requested for the second time that an entry be made in the computer system to halt collection activity against the second EIN number. IRS did not actually levy upon or seize any of Debtor's assets as a result of the second notice of levy.

IRS filed a second amended proof of claim for $97,217.56 on November 16, 1990, which covered Debtor's Social Security number and both employer identification numbers for the years 1987–1990. Pending at the time of the hearing on this matter, was Debtor's objection to the IRS claim, which argued that Debtor's outstanding liabilities totalled just $5,621.04.

Debtor seeks two kinds of compensatory damages: (1) attorney's fees and costs of $3,000 accrued at the time of the hearing, plus any amounts subsequently incurred; and, (2) $10,000 in compensatory damages for embarrassment, anguish, and injury to Debtor's personal and professional reputation. Debtor also requests $50,000 in punitive damages.

### ARGUMENTS

Debtor contends that IRS had all the relevant necessary information about the bankruptcy proceeding and, nevertheless, violated the automatic stay. Although the doctrine of sovereign immunity is ordinarily a barricade that insulates government from responsibility for its transgressions, Debtor argues that § 106 permits an award of damages against IRS for violation of the automatic stay.

IRS opposes Debtor's claim, arguing that the barricade is unbreached. IRS also argues that its violations of the automatic stay were caused by Debtor's failure to list both employer identification numbers in the caption of Debtor's bankruptcy petition. Because of the omission, which IRS says

---

**4.** F.R.Bkrtcy.P. 1005, **Caption of Petition,** provides, in pertinent part:

The caption of a petition commencing a case under the Code shall contain the name of the court, the title of the case, and the docket number. The title of the case shall include the name, social security number and employer's tax identification number of the debtor. . . .

violated F.R.Bkrtcy.P. 1005,[4] the IRS Technical Unit did not receive the information through the customary channel, and was thus deprived of the opportunity to follow its general procedures to suspend collection activity. Accordingly, IRS contends, its post-petition collection attempts were not willful violations of the automatic stay.

### CONCLUSIONS OF LAW

Section 362(a) of the Code provides that the filing of a bankruptcy petition

operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; (and,)

.    .    .    .    .

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of a case under this title

IRS is an "entity," as that phrase is defined in § 101(15),[5] and is thus subject to the automatic stay. Congress intended that the automatic stay be "one of the fundamental debtor protections provided by the bankruptcy laws," H.R. Rep. No. 595, 95th Cong, 1st Sess 340–342, (1977), reprinted in 1978 U.S.Code Cong. & Admin.News, pp. 5787, 6296–6298 and set in place effective means to protect debtors against willful violations.

An individual injured by any willful violation of a stay … *shall* recover actual damages, including costs and attorney

We note that an individual debtor would not be required to list a corporate EIN on an individual petition, because an individual cannot file a joint Chapter 13 petition with a corporation.

**5.** Section 101(15) provides, in pertinent part:

"entity" includes person, estate, trust, governmental unit, and United States trustee.

fees, and in the appropriate circumstances, *may* recover punitive damages. 11 U.S.C. § 362(h). (Emphasis added).

As a preliminary matter to determining whether the award of damages under § 362(h) is appropriate, we must first decide whether the doctrine of sovereign immunity shields IRS from an award of money damages.

> The United States, as sovereign, is immune from suit save as it consents to be sued ..., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.

*United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941). (Citations omitted). A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969). Absent clear congressional consent, then, "there is no jurisdiction ... to entertain suits against the United States." *United States v. Sherwood, supra,* 312 U.S. at 587–588, 61 S.Ct. at 770. Once sovereign immunity is waived, however, "it is also well settled that ... the scope of that waiver is construed liberally to effect its purpose." *In re Fernandez,* 132 B.R. 775, 779 (M.D.Fla. 1991).

To determine whether IRS is subject to the sanctions of § 362(h), we must look to § 106, "the only potential source of such a waiver in this case." *In re Price,* 130 B.R. 259, 261–62 (N.D.Ill.1991). Section 106 defines the limited circumstances in which the sovereign immunity generally enjoyed by government is waived in bankruptcy proceedings. It provides that:

> (a) A government unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and arose out of the same transaction out of which such governmental unit's claim arose.

> (b) There shall be an offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

> (c) Except as provided in subsection (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

> (1) A provision of this title that contains "creditor", "entity" or "governmental unit" applies to governmental units; and

> (2) A determination by the court of an issue arising under such a provision binds governmental units.

The three subsections of § 106 operate in different situations. Both subsections (a) and (b) expressly require that the government have a claim against the estate as a prerequisite to a recovery by the estate against the government. *Hoffman v. Connecticut,* 850 F.2d 50, 55, n. 5 (2d Cir.1988). Subsection (a) permits an affirmative recovery by the estate against the government when the estate's claim arises out of the same transaction as the government's claim. Subsection (b) permits a narrower recovery in a greater number of circumstances because it limits the estate's recovery on any claim it has against the government to the value of any claim, related or unrelated, that the government has against the estate. Debtor seeks to recover more from IRS than Debtor claims to owe in taxes, but less than IRS claims Debtor owes. We must consider both subsections (a) and (b), because this dispute over the amount of Debtor's liabilities has not been resolved. Subsection (c) is broader than subsections (a) or (b) in the sense that, as we hold hereafter, it allows an affirmative recovery against a governmental unit even when the governmental unit has no claim against the estate. Its application is limited, however, (1) to those specific provisions of the Code which contain the trigger words "creditor," "entity," or "governmental unit," and (2) to our determination of issues arising under such provisions.

■ We believe that each subsection of § 106 subjects IRS to liability for willful violations of the automatic stay, and address them in turn.

The plain language of Section 106(a) is that Congress has waived the sovereign immunity of a governmental unit only when the following conditions are met:

(1) the estate has a claim against the governmental unit and the governmental unit has a claim against the estate;

(2) the claim against the governmental unit is property of the estate; and

(3) the claims of each must arise out of the same transaction or occurrence.

*Matter of Cowart,* 128 B.R. 492, 497 (Bkrtcy.S.D.Ga.1990). The first condition is satisfied. IRS has filed proofs of claim against Debtor, and Debtor has a claim against IRS for postpetition violations of the automatic stay. Debtor's claim is property of the estate by operation of §§ 541 and 1306. Section 541, **Property of the Estate,** provides, in pertinent part:

(a) The commencement of a case ... creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) ... all legal or equitable interests of the debtor in property as of the commencement of the case.

"The House and Senate Reports on the Bankruptcy Code indicate that § 541(a)(1)'s scope is broad," *U.S. v. Whiting Pools, Inc.,* 462 U.S. 198, 204–05, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983), and includes "choses in action and claims by the debtor against others." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 367 (1977), U.S.Code Cong. & Admin.News 1978, p. 6323, *reprinted in* App. 2 *Collier on Bankruptcy,* II. H.R.Rep. 595 at 367 (15th ed. 1991). Section 1306(a)(1) expands the definition of "property of the estate" in Chapter 13 cases to include

all property of the kind specified in (§ 541) that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under Chapter 7, 11, or 12 of this title, whichever occurs first....

Moreover, the claim is also property of the estate under § 1306(a)(2), which includes postpetition earnings, because

any attorneys' fees which were incurred as the result of the IRS' error and which the Bankruptcy Court might award to [Debtor's] counsel would, if imposed upon the [Debtor] rather than the IRS, diminish the income which the [Debtor]

could devote to the payment of ... prior debts.

*In re Price, supra,* 130 B.R. at 269–70. Thus, Debtor's postpetition claim against IRS for violations of the automatic stay constitutes "property of the estate," and the second requirement is satisfied.

The only issue remaining to establish IRS liability for damages under § 106(a) is whether Debtor's claim against IRS and the IRS claim against Debtor both arose out of the same transaction. IRS contends the two claims are discrete and unrelated. Most Bankruptcy Courts that have considered the issue have come to the opposite conclusion. *In re Price, supra,* a case factually similar to ours, contains a succinct, well-reasoned discussion of the appropriate standard and its application when the two claims are an IRS claim for prepetition taxes and a debtor's claim for damages for violation of the automatic stay.

In making this determination, the Court seeks guidance in the same analysis which governs identification of compulsory counterclaims under Fed.R.Civ.P. 13(a), which also poses the "same transaction or occurrence" inquiry. Under Rule 13(a), the "crucial" inquiry is whether there exists a "logical relationship" between the claim and counterclaim. This test is not given to wooden or formalistic application; rather, "[a] court should consider the totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds." In considering these factors, a court must remain cognizant that the purpose of Rule 13(a) is to conserve judicial resources by promoting the resolution in a single action of all claims which arise from a common factual background. Here the relationship between the [Debtor's] claim for fees and the IRS' proof of claim is both logical and substantial, revealing that the two claims derive from the same transaction or occurrence for purposes of § 106(a). The government's contention to the contrary rests upon the premise that the IRS error—which gave rise to the attorney's

fees—and the [Debtor's] failure to pay their income taxes—which gave rise to the government's claim against the estate—were events which were distinct and unrelated and thus must be treated separately for purposes of the "same transaction or occurrence test." Yet, the Notice which the IRS erroneously sent to the [Debtor] and which gave rise to the attorneys' fees had its genesis in the government's endeavors to collect upon the [Debtor's] overdue income taxes. The levy and the resulting claim for fees would not have occurred had there not been unpaid taxes which the government was trying to collect. Thus, an interpretation which treats the two claims as arising from distinct events turns a blind eye to reality.

*In re Price, supra,* 130 B.R. at 270. (Citations omitted). *See also, In re Bulson,* 117 B.R. 537, 541 (9th Cir. BAP 1990) ("{T}he essential facts relating to the tax claim itself are logically related to the government's collection activities."); *In re Taborski,* 1991 WL 236872 at 2 (Bkrtcy.N.D.Ill. 1991) ("The Debtor's claim against the IRS arose out of the same transaction and occurrence, which was the IRS's attempt to collect the taxes."); *In re Lile,* 103 B.R. 830, 835 (Bkrtcy.S.D.Tex.1989) (IRS claim for unpaid taxes and debtor's claim for damages for postpetition levy both arose out of same transaction or occurrence). IRS could point us to only one case in which a Court held that an IRS claim and the claim of a debtor against IRS for postpetition violations of the automatic stay did not arise out of the same transaction or occurrence. The entire discussion of the issue by *In re Academy Answering Service, Inc.,* 100 B.R. 327, 330 (N.D.Ohio 1989), was limited to one conclusory sentence:

> Nor did Academy's claim for attorney's fees arise out of the same "transaction or occurrence" out of which the government's claim arose.

We are not inclined to disregard the weight of reasoned authority without reason. We agree with the rationale of *Price,* and therefore find that both claims arose out of the same transaction. Accordingly, we hold that § 106(a) waives sovereign immunity, opening the door to an award of damages against IRS for willful violations of the automatic stay.

■ The congressional intent in enacting § 106(b) was to enable the estate to

> offset against an allowed claim, any claim that the debtor, and thus the estate, has against the governmental unit, without regard to whether the estate's claim arose out of the same transaction or occurrence as the government's claim.

H.R.Rep. No. 595, 95th Cong, 1st Sess. 317 (1977); S.Rep. No. 989, 95th Cong, 2nd Sess 29–30 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5815–5816, 6274. However, under § 106(b), a setoff is permitted "only to the extent of the governmental unit's claim." *Id.* Therefore, § 106(b) does not permit affirmative recovery.

> {S}ubsection (a) and (b) of § 106 must be read together. Section 106(a) is applicable only where the debtor's claim exceeds the claim of the governmental unit, and then, affirmative recovery is allowed only to the extent of such excess.

*United States v. McPeck,* 910 F.2d 509, 513 (8th Cir.1990). This result flows from the imperative command of § 106(b) that

> any claim against a governmental unit that is property of the estate "shall be offset" against an allowed claim or interest of the governmental unit. This mandatory language comports with the established principle that an award to a plaintiff on a claim is ordinarily offset against an award to the defendant on a counterclaim; a single judgment is entered for the excess, if any. Thus, the tax claim established by the IRS must initially be offset by the counterclaim of the estate. A contrary rule would not only violate the language of § 106(b), but would contravene general principles of equity by requiring the governmental unit to pay the award to the debtor while being forced to attempt to recover its own claim through bankruptcy.

*Id.,* at 512–513. Accordingly, any award to Debtor must first be offset under § 106(b)

against the amount of the IRS claim as ultimately allowed. IRS is liable to Debtor under § 106(a) and, as we hold hereafter, § 106(c) for any amounts remaining after the offset.

■ The applicability of § 106(c) to matters like that presented here has been the subject of greater controversy. The debate is largely focused on the effect to be given the fractured decisions of the Supreme Court in *Hoffman v. Connecticut*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989), which affirmed the holding of the Second Circuit in *Hoffman v. Connecticut*, 850 F.2d 50 (2d Cir.1988).

Hoffman, the Chapter 7 trustee in two unrelated bankruptcy proceedings, sought in both to extract money from Connecticut for the benefit of each estate.[6] In one case, Hoffman demanded that the State pay the estate of a former nursing home operator for services provided under the Medicaid program. The State, which had filed no proof of claim in the case, admitted that payment was due for services rendered, but claimed the right to recoup for prior overpayments, and asserted sovereign immunity and Eleventh Amendment defenses. In the second case, Hoffman sought to recover an allegedly preferential tax payment. Here again, the State claimed that sovereign immunity and the Eleventh Amendment barred Hoffman's claim. The State moved to dismiss in each case. The Bankruptcy Court denied both motions.

> Judge Krechevsky concluded that Congress had intended § 106(c) to abrogate the state's eleventh amendment immunity from suit ..., and had authorized federal courts to hear such suits.... The bankruptcy court found that the Bankruptcy Clause, U.S. Const., art. I, § 8, cl. 4, empowered Congress to do so.[7]

*Hoffman, supra*, 850 F.2d at 52–53. On appeal, the District Court reversed, holding that § 106(c) had to be read together with subsections (a) and (b). Because

> subsections (a) and (b) provide for limited state exposure to compulsory or permissive counterclaims after it has filed a proof of claim against the estate, a broad reading of subsection (c), "permit[ting] suits against the state for retroactive money damages irrespective of whether the state had" filed a proof of claim, would render subsections (a) and (b) "mere surplusage."

*Id.*, at 53, *quoting In re Willington Convalescent Home, Inc.*, 72 B.R. 1002, 1007 (D.Conn.1987). District Court Judge Dorsey also noted that Congressional intent to abrogate State sovereign immunity must be pelucidly clear from the statute itself. Finding no such unequivocal expression of intent in the statute or its legislative history, he ruled that the Bankruptcy Court had no jurisdiction in either case and reversed.

The Second Circuit affirmed the District Court's reversal of the Bankruptcy Court, though on somewhat different grounds. The Second Circuit expressly eschewed the District Court's "mere surplusage" analysis, noting

> critical differences that preclude (a) and (b) from being considered surplusage. As observed in *Matter of Neavear*, 674 F.2d 1201 (7th Cir.1982), § 106(c), "unlike sections 106(a) and (b), does not condition the waiver of sovereign immunity upon the filing of a proof of claim," id. at 1204. Moreover, §§ 106(a) and (b) are not tied to any particular Code sections, while subsection (c) applies only to those Code provisions containing "creditor," "entity," or "governmental unit."

*Hoffman, supra*, 850 F.2d at 55, n. 5 (citation omitted). We perceive somewhat conflicting signals from the Second Circuit's

---

6. Our discussion of the factual situation and procedural history in *Hoffman* is drawn from the Second Circuit's opinion, *Hoffman, supra*, 850 F.2d at 51–53.

7. We reached the same conclusion about waiver of State sovereign immunity under § 106(c) in *In re Anderson*, 70 B.R. 759, 761–62 (Bkrtcy. D.Vt.1987), relying in part upon Judge Krechev-

sky's decision in *Matter of Willington Convalescent Home, Inc.*, 39 B.R. 781 (Bkrtcy.D.Conn. 1984), one of the two cases consolidated in *Hoffman*. We acknowledge, for the reasons set out in the discussion which follows, that the portion of our decision in *Anderson* which premised State liability on a waiver under § 106(c) has been overruled by *Hoffman*.

general discussion of the impact of § 106(c) on sovereign immunity. By contrast with the narrow scope of sections (a) and (b), the Court of Appeals held,

> § 106(c)(2) provides only that governmental units are bound by a "determination by the court of an issue arising under" a provision containing one of the "triggering" terms enumerated in subsection (c)(1).

*Id.*, at 55. (Citation omitted). Similarly, examining the legislative history of § 106, the Second Circuit found that the legislative intent was that

> governmental units are bound not only by determinations involving the amount and dischargeability of tax claims, but also by determinations made under any Code section containing a triggering term.

*Id.*, at 56.

Without more, we would feel confident holding that § 106(c) waives sovereign immunity to permit an award of attorneys' fees against IRS for violations of the automatic stay. Section 106(c)(1) binds IRS to comply with § 362(a), because § 362(a)— "applicable to all entities"—contains the necessary "trigger" word. While § 362(h) does not itself contain a "trigger" word, it expressly commands that "{a}n individual injured by *any* willful violation of a stay provided by this section *shall* recover actual damages ..." (Emphasis added.)

More importantly, Debtor's § 362(h) motion for damages for violation of the automatic stay is, we believe, indisputably "an issue arising under" § 362(a). The "arising under" formulation of § 106(c) "echoes the wording," *Hoffman v. Connecticut,* 492 U.S. 96, 102, 109 S.Ct. 2818, 2823, 106 L.Ed.2d 76 (1989), of the "arose out of" language of § 106(a), which, as we have already noted, requires application of a "logical relationship" standard. Any reasonable application of that standard, we believe, compels the conclusion that a § 362(h) claim for damages is "an issue arising under" § 362(a), which does contain the necessary "trigger" words.

We also find persuasive the arguments by District Court Judge Rovner, in *Price, supra,* 130 B.R. at 268.

> [Section 362(a)] sets forth the stay provisions which are "applicable to all entities," ... and it is for violations of this subsection that § 362(h) supplies the remedy. Thus, in search of the trigger words needed in order to subject the government to liability, it is appropriate to read these two subsections together, for it is subsection (h) which gives teeth to subsection (a).... {T}he legislative history of § 362(a) plainly reflects a congressional intent to make the automatic stay provisions of the Bankruptcy Code applicable to the federal government. Application of § 362(h) to governmental entities such as the IRS is consistent with that purpose, because it places these entities on a par with other creditors who suffer the threat of liability should they violate the stay provisions of the Code. These provisions are, as many courts have acknowledged, vital to the success of the "fresh start" which the Code was meant to provide debtors. Thus, it would be inconsistent with the spirit of both the Code and the congressional intent underlying § 362(a) to exempt the federal government from liability under the enforcement provisions of § 362(h). Debtors in bankruptcy, who typically have so little to begin with, should not be made to bear the costs imposed by the government's mistakes.

(Citations omitted).

Accordingly, we are inclined to conclude that § 106(c) does waive sovereign immunity to permit entry of an order compelling IRS to pay money to persons injured by its violations of the automatic stay. We are given pause, however, by the Second Circuit's holding in *Hoffman* that

> the plain language of § 106(c)(1) and (2), particularly when read in light of § 106(a) and (b), waives state sovereign immunity only to the extent necessary for the bankruptcy court to determine a state's rights in the debtor's estate.

*Hoffman, supra* 850 F.2d at 55. Appearing as it does in a general discussion of

sovereign immunity with no specific reference to Eleventh Amendment issues, this holding suggests at first glance that no affirmative recovery is possible against a governmental unit under § 106(c). Upon close consideration, however, we are persuaded for several reasons that the Second Circuit does not take that position. First, the holding is expressly limited to waiver of "state sovereign immunity." While it does appear in a general discussion of sovereign immunity, reading the Court's opinion as a whole, we conclude that the holding is premised on Hoffman's failure "to surmount the heavy burden of showing congressional waiver of eleventh amendment immunity from actions for money recoveries," *Id.* at 56. The Eleventh Amendment does not protect Federal governmental units. Second, at issue in *Hoffman* were the trustee's attempts to recover moneys from the State in connection with prepetition transactions. Here, by contrast, Debtor seeks to hold a Federal agency liable for postpetition transgressions. Third, extending the Second Circuit's holding to Federal agencies would render § 106(c) "mere surplusage," because it would require as a prerequisite to relief that the governmental agency have "rights in the debtor's estate"—a claim. Under such a reading, all cases arising under § 106(c) would also be covered under §§ (a) or (b). Indeed, upon appeal, the Supreme Court noted that § 106(c)

> applies to the Federal Government as well (as to the States), see 11 U.S.C. § 101(26) ..., and the language in § 106(c) waives the sovereign immunity of the Federal Government so that the Federal Government is bound by determinations of issues by the bankruptcy courts *even when it did not appear and subject itself to the jurisdiction of such courts.*

*Hoffman, supra,* 492 U.S. at 103, 109 S.Ct. at 2823, 106 L.Ed.2d at 85. (Emphasis added). Finally, such a reading would strike at the heart of our power to enforce the automatic stay against the most feared creditor in the United States today, one which, as here, is frequently sluggish, and on occasion, acts in wanton and malicious disregard for the rights of debtors in bankruptcy. See, e.g., *Matter of Cowart,* 128 B.R. 492, 497 (Bkrtcy.S.D.Ga.1990) ("The conduct of the IRS in this case is inexcusable and clearly damaged this Debtor....");[8] *In re Lile,* 103 B.R. 830, 841 (Bkrtcy.S.D.Tex.1989) ("IRS agent acted with reckless disregard and in 'arrogant defiance' of a federally protected right."). The automatic stay is one of the foundational principles on which the whole bankruptcy system is built. We will not relinquish the power to enforce it, which appears to be ours under a plain reading of § 106(c), until we are explicitly ordered to do so by a higher Court.

IRS contends that the Supreme Court's opinion in *Hoffman* is just such an order. We do not agree. Although Second Circuit was affirmed, the Supreme Court failed to produce a majority position. Justice White, writing for the plurality, held that

> to abrogate the States' Eleventh Amendment immunity from suit in federal court, ... Congress must make its intention "unmistakably clear in the language of the statute." *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171, 179 (1985).

Finding no such unmistakable expression of intent in the language of § 106(c), White ruled that Hoffman's suits against Connecticut were barred by the Eleventh Amendment.

The plurality's construction of the statute, had it mustered a majority, would have precluded our holding that § 106(c) waives IRS sovereign immunity in these circumstances.

> While the precise question in *Hoffman* was the extent to which the states' eleventh amendment immunity had been abrogated under section 106(c), the Court's opinion refers to the federal government as well, and its analysis is equally appli-

---

**8.** Despite finding that "Section 362(h) sanctions would be appropriate," id., the Court in *Cowart* read the Supreme Court's decision in *Hoffman* differently than we do, and thus found that sovereign immunity barred relief to the injured debtor.

cable to a waiver of sovereign immunity by the federal government.

*Price, supra,* 130 B.R. at 264. Judge Rovner notes that Courts considering the issue since *Hoffman* have been divided, but argues convincingly that we are not bound, because,

> even assuming that *Hoffman* is controlling on the matter of the federal government's sovereign immunity under § 106(c), there is no signal from the divided court which suggests one result or another on this question.

*Price, supra,* 130 B.R. at 267. We concur with Judge Rovner's opinion as to the nonbinding effect of the Supreme Court's decision in *Hoffman,* and in the reasons he gives for holding that § 106(c) waives sovereign immunity and permits an award of attorneys' fees under § 362(h). *Id.,* at 262–68, 105 S.Ct. at 3157–60.

Because the Supreme Court has not settled the issue, we have reasonable freedom to make our holdings on several points raised in the plurality opinion by Justice White.

> Under petitioner's interpretation of § 106(c), ... the only limit is the number of provisions of the Bankruptcy Code containing one of the trigger words. With this "limit," § 106(c) would apply in a scattershot fashion to over 100 Code provisions.

> We believe that § 106(c)(2) operates as a further limitation on the applicability of § 106(c), narrowing the type of relief to which the section applies. Section 106(c)(2) is joined with subsection (c)(1) by the conjunction "and." It provides that a "determination" by the bankruptcy court of an "issue" "binds governmental units." This language differs significantly from the wording of §§ 106(a) and (b), both of which use the word "claim," defined in the Bankruptcy Code as including a "right to payment." Nothing in § 106(c) provides a similar express authorization for monetary recovery from the States.

*Hoffman, supra,* 492 U.S. at 102, 109 S.Ct. at 2822–23, 106 L.Ed.2d at 84. We fail to see how use of the conjunction "and" can be construed to narrow the situations to which § 106(c) applies. "And" adds to; it does not subtract from. As we read § 106, it applies to all those situations described in § 106(c)(1), "{t}ogether with or along with; also; in addition (to); as well as ... {a}dded to; plus," those in § 106(c)(2).[9] Moreover, we know of no rule of statutory construction that requires a general provision like § 106(c), which by reference applies to a number of Code sections, to be narrowed because other provisions are more narrow and specific.

We are also troubled by the plurality's holding that

> {t}he language of § 106(c)(2) is more indicative of declaratory and injunctive relief than of monetary recovery. The clause echoes the wording of sections of the Code such as § 505, which provides that "the court may determine the amount or legality of any tax," 11 U.S.C. § 505(a)(1), a determination of an issue that obviously should bind the governmental unit but that does not require a monetary recovery from a State. We therefore construe § 106(c) as not authorizing monetary recovery from the States.

*Id.* In fact, however, we found more than 70 uses of variations of the word "determine" in more than 30 Code sections. The occurrence in closest proximity to § 106, § 105(a), authorizes us to

> mak{e} any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Numerous cases have recognized the propriety of monetary sanctions under § 105(a) for violations of the automatic stay, exactly the type of monetary recovery at issue in the matter before us. See, e.g., *In re First RepublicBank Corporation,* 113 B.R. 277, 279 (Bkrtcy.N.D.Tex.1989); *Dubin v. Jakobowski (In re Stephen W. Grosse, P.C.),* 84 B.R. 377, 385–86 (Bkrtcy.

---

**9.** The quoted material in the preceding sentence is from the definition of "and" in The American Heritage Dictionary (Houghton Mifflin Company 1985).

E.D.Pa.1988); *Matter of Miller*, 81 B.R. 669, 676–77 (Bkrtcy.M.D.Fla.1988); *Kellogg v. Chester*, 71 B.R. 36, 38 (N.D.Tex.1987). Moreover, determination of the amount of a tax under § 505 itself ultimately determines the monetary recovery of the taxing authority. Many of the other uses of variations of "determine" also involve the fixing of sums of money.[10] Indeed, our parsing of the many uses of "determine" and its derivatives persuades us that Congress intended it to have its common dictionary definition—"{t}o decide or settle ... conclusively and authoritatively", "{t}o end or decide by judicial or other final action", "{t}o establish or ascertain definitely, as after consideration, investigation, or calculation." The American Heritage Dictionary, *supra.* We suspect that it was just such a meaning that the Supreme Court itself had in mind when it promulgated F.R.Bkrtcy.P. 9020:

> (a) ... Contempt committed in the presence of a bankruptcy judge may be *determined* summarily by a bankruptcy judge....
>
> (b) ... Contempt committed in a case or proceeding pending before a bankruptcy judge, except when determined as provided in subdivision (a) of this rule, may be *determined* by the bankruptcy judge only after a hearing on notice....

(Emphasis added.) Accordingly, we hold that § 106(c) waives sovereign immunity to permit an award of attorneys' fees against IRS for violation of the automatic stay.

■ We turn next to the issue of whether IRS violations of the automatic stay were willful or malicious. The word "willful," in this context, "is defined as a deliberate act done with the knowledge that the act is in violation of the automatic stay." *In re Price*, 103 B.R. 989, 993 (Bkrtcy. N.D.Ill.1989), citing, *In re Forty Eight Insulations, Inc.*, 54 B.R. 905, 909 (Bkrtcy. N.D.Ill.1985); *In re Allen*, 83 B.R. 678, 681 (Bkrtcy.E.D.Mo.1988); *In re Wagner*, 74

B.R. 898, 903 (Bkrtcy.E.D.Pa.1987). In the Second Circuit,

> any deliberate act taken in violation of a stay, which the violator knows to be in existence, justifies an award of actual damages. An additional finding of maliciousness or bad faith on the part of the offending creditor warrants the further imposition of punitive damages pursuant to 11 USC § 362(h).

*Crysen/Montenay Energy Co. v. Esselen Associates, Inc. (In re Crysen/Montenay Energy Co.)*, 902 F.2d 1098, 1105 (2nd Cir. 1990).

Conduct of the kind at issue here has been found to be willful in other cases. *In re Bulson*, 117 B.R. 537 (9th Cir. BAP 1990) involved a debtor who received a "Past Due Final Notice" from IRS after the automatic stay had been in effect for several months. IRS believed the case was closed and initiated automated collection procedures to pursue taxes owed by the debtor. The Bankruptcy Appellate Panel held:

> The fact that the IRS might have been mistaken about the status of the case, or believed it had the right to execute on the Debtor's property does not make the act of collection non-willful.

*In re Bulson, supra,* 117 B.R. at 539. The Court stressed that "{t}he IRS had notice and participated in this bankruptcy case, so that it had knowledge of the automatic stay." *Id.* Thus, the conduct of IRS was "willful" under 362(h) because "{t}he action by IRS was clearly directed at collection of the tax debt and therefore was intentional." *Id.* Here, too, the facts show IRS had notice and participated in the bankruptcy proceeding.

Similarly, in *Price, supra,* 103 B.R. at 990, the debtor received a "Notice of Intention to Levy," after notice to IRS of the petition, and entry of an order confirming a plan. IRS argued that the notice was mis-

---

**10.** Among the Code provisions authorizing or requiring the fixing of money amounts are:

§ 322, determination by U.S. trustee of the amount of a bond;

§ 502(b), (e)(2), (f), (g), (h), (i) amounts of claims;

§ 505(a)(1), amount of tax liabilities;

§ 506(a), value of secured claim;

§ 1129(a)(12), amount of fees owed by debtors; and,

§ 1305(b), amount of certain postpetition claims.

takenly generated by a computer error, and issued by a department within IRS that was unaware of the pendency of the case. *Id.*, at 992–93. The Court, citing *In re Carlsen*, 63 B.R. 706 (Bkrtcy.C.D.Cal.1986) and *In re Stucka*, 77 B.R. 777 (Bkrtcy. C.D.Cal.1987) found that this conduct was a willful violation of the automatic stay, notwithstanding the assertion that it was a result of a computer error. *Id.*, at 993.

> The IRS must be charged with the knowledge of its agents. The size and complexity of the IRS does not excuse its disregard of the automatic stay. The automatic stay must be enforced against the IRS just as it is against other individual and corporate creditors who may persist in collection efforts after a petition for relief has been filed. The issuance of the IRS Notice was an affirmative act. Therefore, the Court finds that the act of sending same was a willful violation of the automatic stay.

(Citations omitted).

IRS' assertions that its violations were caused by Debtor's failure to list the second EIN number are not persuasive. The parties have not provided us with information sufficient to determine whether Debtor in fact had an obligation to list both EIN numbers. If, as the Rossi memorandum suggests, EIN # 13–3350925 was issued to a professional corporation, Debtor would have had no obligation to list it upon filing personally. F.R.Bkrtcy.P. 1005. In any event, IRS concedes its employees had knowledge of the second EIN number well prior to the levy. IRS must be charged with the knowledge of its employees and agents. *In re Price, supra*, 103 B.R. at 993. "{T}he IRS is equipped with an experienced legal staff that is familiar with the application and scope of the automatic stay." *In re Lile*, 103 B.R. 830 (Bkrtcy. S.D.Tex.1989). Had IRS exercised reasonable prudence, it would have found the second EIN number, and made whatever computer entries were necessary to suspend collection. Its prepetition attempt to collect turned up the second number. We won't allow IRS to make less of an effort to comply with the automatic stay provisions of the Code and the orders of this Court than it makes to collect from a debtor. Furthermore, at the time the second notice of levy was sent, IRS clearly had knowledge of the second EIN, because it had already violated the stay once trying to collect under that number.

Accordingly, we hold that both violations of the automatic stay were willful, and Debtor is entitled to recover compensatory damages from IRS. This award is limited to attorney's fees and costs, because Debtor failed to introduce evidence as to other harm suffered. The parties are to work cooperatively to agree on the amount of Debtor's reasonable attorney's fees and costs in this matter. If they are unable to agree, Debtor may move to have us determine the issue.

We turn finally to the question of whether IRS acted with "maliciousness or bad faith" so as to warrant punitive damages. "{P}unitive damages are awarded in response to particularly egregious conduct for both punitive and deterrent purposes." *Wagner v. Ivory (In re Wagner)*, 74 B.R. 898, 903 (Bkrtcy.E.D.Pa.1987), citing *Cochetti v. Desmond*, 572 F.2d 102, 106 (3d Cir.1978). "To recover punitive damages, the defendant must have acted with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so," *Id.*, at 904. We are unable to conclude from the facts before us that the conduct of IRS was malicious or in bad faith. Accordingly, Debtor's motion for punitive damages is denied.

In summary, we find that: (1) IRS twice violated the automatic stay; (2) both violations were willful; (3) neither violation was malicious or in bad faith; and (4) Debtor is entitled to recover only reasonable costs and attorney's fees. We hold that an award of damages may be assessed against IRS for its willful violations of the automatic stay, because sovereign immunity is waived under each of subsections (a), (b), and (c) of § 106. Debtor's reasonable attorney's fees and costs shall first be offset against the amount of his liability to IRS, as required by § 106(b). In the event an

offset against the amount of the IRS claim as allowed does not satisfy the award, IRS shall forthwith pay the balance due Debtor.

Counsel for Debtor is to settle an order consistent with this Memorandum of Decision.