**In re Kay S. BULSON, Debtor.**

**The UNITED STATES of America, Appellant,**

**v.**

**Kay S. BULSON, Appellee.**

**BAP No. EW 88–1357–AsRMe.
Bankruptcy No. 85–01021–108.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted June 14, 1989.

Decided Aug. 17, 1990.

Thomas Moore—Spokane, Wash., for appellant.

Gregory J. Jalbert—Spokane, Wash., for appellee.

Before ASHLAND, RUSSELL and MEYERS, Bankruptcy Judges.

## OPINION

ASHLAND, Bankruptcy Judge:

The United States appeals the bankruptcy court's order awarding attorneys' fees and costs to the debtor for willful violation of the automatic stay under § 362(h). We affirm.

## FACTS

The facts in this case are undisputed. Ms. Bulson, the debtor, filed her Chapter 13 petition on May 3, 1985. The debtor listed the IRS as a priority creditor with $1,000 of the claim being secured. The amount of the federal lien was based upon the equity the debtor had in her automobile.

The debtor filed a claim on June 14, 1985, on behalf the Internal Revenue Service in the amount of $25,657.54, indicating $1,000.00 of the amount was secured. The debtor's plan, which was confirmed on July 23, 1985, provided that priority claims would be paid in full and secured claims would be paid at the present value of the claim. On August 2, 1985, the IRS filed its own claim of $21,382.64, showing the entire amount to be secured.

The debtor successfully completed payments under the plan and sought to have the IRS release the tax lien on Ms. Bulson's property. On September 28, 1987, a technician at the IRS contacted the Chapter 13 office concerning the outstanding balance of the taxes. The technician was told that the plan was completed. Believing the case was closed, on October 9, 1987, the technician initiated automated collection procedures to collect the taxes owed by the debtor.

On November 16, 1987, the debtor received a notice from the IRS entitled "Past Due Final Notice (Notice of Intention to Levy)." The notice advised the debtor that if she did not pay $33,330.73 within ten days, a federal tax lien would be filed and that her property could be seized and sold by the IRS.

On the date the debtor received the notice, the automatic stay provided for in § 362 was still in effect. The debtor filed a motion seeking entry of a contempt order against the IRS for violation of the automatic stay. After a hearing on the motion, the bankruptcy court held that the IRS willfully violated the automatic stay and awarded to the debtor attorneys' fees and costs in the amount of $982.20.

## ISSUES

1. Did the IRS willfully violate the automatic stay?

2. Did the bankruptcy court have jurisdiction to award damages against the United States?

## STANDARD OF REVIEW

This court reviews a bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law de novo. In re Probasco, 839 F.2d 1352, 1353–54 (9th Cir.1988). Since the facts are not in dispute the question of

whether the IRS's conduct was willful will be reviewed *de novo*. Whether the bankruptcy court has jurisdiction to award damages is a question of law, and therefore, reviewed *de novo*.

## · DISCUSSION

■ The United States concedes that the mailing of the collection notice was a violation of the automatic stay provided in § 362; however, the government contends that the actions of the IRS were not willful and as a result damages should not be awarded under § 362(h). Section 362(h) states:

> (h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(h).

The declaration of the IRS technician offered by the United States indicates that she was informed that the plan had been completed. From this information the technician believed the case to be closed. Thus, the IRS technician was acting under the mistaken belief that the case was closed and that the stay had been lifted. As a result of the mistaken belief, the technician initiated automated collection proceedings against the debtor. Accordingly, the United States argues that the conduct was not willful and, therefore, damages under § 362(h) are inappropriate.

The Ninth Circuit has defined the word "willful" as used in § 362(h):

> A "willful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded.

*In re Bloom, M.D.*, 875 F.2d 224, 227 (9th Cir.1989), (citing *INSLAW, Inc. v. United States (In re INSLAW, Inc.)*, 83 B.R. 89, 165 (Bankr.D.D.C.1988), *aff'd as modified*, 113 B.R. 802 (D.D.C.1989)). The action by the IRS was clearly directed at collection of the tax debt and therefore was intentional. The IRS had notice of and participated in this bankruptcy case, so that it had knowledge of the automatic stay. The fact that the IRS might have been mistaken about the status of the case, or believed it had a right to execute on the debtor's property does not make the act of collection non-willful. *See In re Allen*, 83 B.R. 678, 680–81 (Bankr.E.D.Mo.1988). As a result, the actions taken by the IRS were "willful" as that word is used in § 362(h).

The United States next argues that the bankruptcy court did not have jurisdiction to award compensatory damages against the government. Specifically, the United States argues that the bankruptcy court did not have jurisdiction to award damages against the government in the absence of a statute expressly authorizing such relief. The United States contends that the plain language of § 362(h) does not contain an express authorization for bankruptcy courts to make an award of damages against the government.

■ We begin our analysis with the basic notion that governmental bodies enjoy immunity from suit, and that the doctrine of sovereign immunity protects the federal government from suits brought by the debtor in a bankruptcy case. However, the government's sovereign immunity may be waived, provided that the waiver is clear and explicit and not merely inferred. *Edwards v. United States*, 163 F.2d 268, 269 (9th Cir.1947); *see Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 267–69, 95 S.Ct. 1612, 1626–27, 44 L.Ed.2d 141 (1975); *NAACP v. Civiletti*, 609 F.2d 514, 518–21 (D.C.Cir.1979), *cert. denied*, 447 U.S. 922, 100 S.Ct. 3012, 65 L.Ed.2d 1114 (1980).

■ A two step analysis is required to determine whether compensatory damages may be awarded against the United States. First, the claimant, in this case the debtor, must find a statute which confers upon the claimant the substantive right which is

sought to be enforced. The second step is to find a statute which clearly waives the immunity from suit for enforcement of the substantive right against the United States. *See United States v. Testan,* 424 U.S. 392, 399–401, 96 S.Ct. 948, 953–55, 47 L.Ed.2d 114 (1976). In this case the United States concedes that § 362(h) confers upon the debtor a substantive right to payment for a willful violation of the automatic stay provisions of § 362(a). However, the United States argues that there is no language in § 362(h) which can be construed as a waiver of sovereign immunity.

The debtor argues that 11 U.S.C. § 106(a) contains an express waiver of sovereign immunity applicable to this case. Section 106(a) provides:

> (a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

11 U.S.C. § 106(a).

Under the clear terms of § 106(a), the waiver applies whenever 1) the governmental unit has a "claim" against the estate [1], and 2) the estate's claim against the governmental unit "arose out of the same transaction or occurrence out of which such governmental unit's claim arose." *In re Town and Country Home Nursing Servs., Inc.,* 112 B.R. 329, 333 (9th Cir. BAP 1990).

In *Town and Country,* this court recognized § 106(a) as an "unequivocally expressed" waiver of sovereign immunity with respect to certain claims by a bankruptcy estate against a governmental unit. *Town and Country,* 112 B.R. at 332. In *Town and Country,* the debtor sued the federal government as a result of the government's offsetting, post-petition, a

debt owed by the debtor. *Id.* at 331. The federal government argued that they were protected under the doctrine of sovereign immunity. *Id.* at 332. However, the bankruptcy court found that the federal government waived its sovereign immunity pursuant to § 106(a), because the offset amounted to the assertion of an informal claim. *Id.* at 335. Offsetting the debt and giving notice of the offset was found by the bankruptcy court to be sufficient to establish a governmental claim triggering a waiver of sovereign immunity. *Id.* Thus, this court held that the federal government waived its sovereign immunity as to compulsory counterclaims pursuant to 106(a). *Id.*

The recent Supreme Court decision of *Hoffman v. Connecticut Dep't. of Income Maintenance,* —— U.S. ——, 109 S.Ct. 2818, 2824, 106 L.Ed.2d 76 (1989) explores the relationship of §§ 106(a) and (b) to § 106(c) and the application of § 106(c) as an express waiver of sovereign immunity. In *Hoffman,* the trustee sought monetary relief for turnover of property and preferential payments from the state of Connecticut arguing that the government waived sovereign immunity under § 106(c). *Id.* 109 S.Ct. at 2820. The Court held § 106(c) did not provide an express waiver of sovereign immunity when the state has not filed a claim. *Id.* In its analysis, the Court compared § 106(a) to § 106(c). *Id.* The court recognized that unlike § 106(c), § 106(a) provides an express authorization of waiver of the states' sovereign immunity under the Eleventh Amendment. *Id.*

Unlike *Town and Country* where there was a question as to whether a claim had been filed against the debtor's estate, the federal government in this case filed a formal proof of claim for the debtor's unpaid taxes on August 2, 1985. Following *Town and Country,* it is clear a claim was filed against the debtor's estate and thus the

---

**1.** Section 1306 of the Bankruptcy Code defines property of the estate.

> (a) Property of the estate includes, in addition to the property specified in section 541 of this title—
> (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case un-

der chapter 7, 11, or 12 of this title, whichever occurs first; and
> (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

11 U.S.C. § 1306(a)(1) & (2).

first requirement under § 106(a) is satisfied. If the second requirement under § 106(a) is fulfilled, then under *Hoffman* and *Town and Country* the claim operates as an express waiver of sovereign immunity.

 The second requirement under § 106(a) is that the claim against the government must arise from the same transaction or occurrence as the government's claim. Federal Rule of Civil Procedure 13(a) defines a compulsory counterclaim as a claim which arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. In order to determine whether two claims arise out of the same transaction or occurrence this circuit applies the "logical relationship" test. *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th Cir. 1987). The basic approach under this test is to analyze whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all issues should be resolved in one lawsuit. *Id.* A logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant. *In re Lile*, 96 B.R. 81, 85 (Bankr.S.D.Tex.1989) (quoting *U.S. v. Aronson*, 617 F.2d 119 (5th Cir.1980)); *Plant v. Blazer Fin. Servs.*, 598 F.2d 1357, 1361 (5th Cir.1979). Further, the same transaction or occurrence should be liberally interpreted under Fed.R.Civ.P. 13(a). *Lile*, 96 B.R. at 85.

 In this case, the IRS's claim against the debtor arises from the debtor's failure to pay taxes owed. The debtor's claim arises pursuant to the attempt by the IRS to collect these taxes owed by the debtor. The basis of both cases revolve around the aggregate core of facts regarding the debtor's unpaid taxes. Therefore, we find that under these circumstances the essential facts relating to the tax claim itself are logically related to the government's collection activities. As a result, the United States sovereign immunity is waived under § 106(a). Thus, the questions raised by the debtor of whether the United States waived its sovereign immunity under the Federal Torts Claim Act, 28 U.S.C. § 1346(b) or 11 U.S.C. § 106(c) need not be addressed.

## CONCLUSION

The judgment of the bankruptcy court awarding attorneys' fees and costs to the debtor under § 362(h) is affirmed. Each party shall bear their own costs on appeal.