**In re Mary Leasure UNROE, Debtor.**

**Mary Leasure UNROE, Plaintiff,**

v.

**UNITED STATES of America, By and Through its DEPARTMENT OF TREASURY, INTERNAL REVENUE SERVICE, Defendant.**

**Bankruptcy No. 86–4221–RWV–13.
Adv. No. 90–244.**

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

March 31, 1992.

**86**

Lynn Butcher, UAW–GM Legal Services Plan, Anderson, Ind., Judith E. Seubert, Louis Rosenberg, UAW–GM Legal Services Plan, Indianapolis, Ind., for debtor.

Steven E. Cole, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., Diane Worland, I.R.S., and Robert A. Brothers, Indianapolis, Ind., for defendant.

## ORDER GRANTING MOTION TO DISMISS AND ORDER OF DISMISSAL

RICHARD W. VANDIVIER, Bankruptcy Judge.

This matter comes before the Court on the Motion to Dismiss filed on November 15, 1990, by the United States. The Court now grants the motion and dismissed this case for the reasons below.

The Debtor filed for relief under Chapter 13 of the Bankruptcy Code on July 18, 1986, and after litigation over the Debtor's federal tax liabilities, a plan was confirmed on April 30, 1989. This Court's entry of January 23, 1989, reflects that the Debtor's 1982 and 1983 tax liabilities were paid in full through the plan, and the United States admits that the these liabilities have been satisfied. (The case remained open because the appeal of the tax liability decision wasn't decided until 1991. *See In re Unroe*, 937 F.2d 346 (7th Cir.1991).)

On June 8, 1990, the Debtor filed a Verified Complaint for Preliminary and Permanent Injunction, Contempt of Court, Turnover, Sanctions, and Declaratory Relief ("the Complaint") against the United States, by and through the IRS. The Debtor asserted that despite full payment of her 1983 taxes through her Chapter 13 plan, on June 4, 1990, in violation of the automatic stay, the IRS notified the Debtor of its intent to levy on her property for nonpayment of the 1983 taxes, and that on May 7, 1990, the IRS intercepted the Debtor's $199.58 refund for overpayment of taxes for the year 1989. In a subsequent filing, the Debtor asserts that refunds for the years 1986, 1987 and 1988 were also intercepted in violation of the automatic stay, and were released only after many letters and phone calls.

The Debtor seeks both injunctive and monetary relief. On the injunctive side, the Debtor seeks a preliminary order enjoining the IRS from further attempts to collect the 1982 and 1983 taxes, a permanent order enjoining the IRS from collecting tax debts against the Debtor or her property without first seeking modification of the automatic stay, and an order that the IRS release the "bankruptcy freeze code" on the Debtor's name and social security number. For monetary relief, the Debtor seeks turnover the overpayment of 1989 taxes, actual and punitive damages, costs and reasonable attorney fees.

The IRS seeks dismissal on the grounds of mootness and sovereign immunity. In its brief in support, the IRS does not defend its actions, but attributes them to a

"computer problem". The IRS contends that upon being informed of the problem, it took immediate steps to correct it and promptly returned the 1989 tax overpayment, with interest, thus mooting the Debtor's claim for injunctive relief, and that the United States has not waived its sovereign immunity with respect to the Debtor's claims for monetary relief.

*Sovereign Immunity from Monetary Claims under the Bankruptcy Code*

Although no specific statutory basis for monetary relief is cited in the Debtor's complaint, the relief requested (aside from the request for turnover of the refund, which had been accomplished) tracks the language of 11 U.S.C. section 362(h), which provides that "[a]n individual injured by any willful violation of a stay provided for in this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages." This section would be applicable against the government, however, only with its consent, i.e. if it has waived its sovereign immunity to suit under this section.

Under the Bankruptcy Code:

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

11 U.S.C. section 106.

The Debtor argues that the United States has waived its sovereign immunity

under all three subsections of this provision. The Supreme Court recently declared that waivers of sovereign immunity are generally strictly construed in favor of the sovereign, and decided that Section 106(c) was not a waiver of the government's sovereign immunity from actions seeking money damages. *See United States v. Nordic Village, Inc.,* —— U.S. ——, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). Therefore, if the Debtor's claims for monetary relief under Section 362(h) are to survive dismissal, they must fall under subsections (a) or (b) of section 106.

█ Subsection (a) applies only if the Debtor's claim is a compulsory counterclaim to the government's claim. The Debtor cites *In re Bulson,* 117 B.R. 537 (9th Cir.BAP 1990), and *In re Price,* 103 B.R. 989 (N.D.Ill.1989), *aff'd,* 130 B.R. 259 (N.D.Ill.1991), to support her contention that her monetary claims against the United States are indeed such claims. Both cases found that a debtor's claim against the IRS for violating the automatic stay by its postpetition collection efforts arose from the same transaction or occurrence as the government's claim for the taxes it was attempting to collect. In *Price,* the collection effort occurred shortly after a Chapter 13 plan was confirmed, so the taxes had not been paid at the time the debtors sought damages.

In *Bulson,* as in this case, it appears that the collection attempt was made after the debtor had successfully completed her plan, which paid in full all prepetition taxes. *See* 117 B.R. at 538. Finding that the government's claim for taxes and the debtors' claim for improper actions to collect those taxes arose from the same aggregate core of facts regarding the debtor's unpaid taxes, the court held that the waiver of Section 106(a) applied. *Id.* at 541. There is, however, a gap in this logic. At the time of the collection effort, the government no longer had any claim against the debtor, as it had been paid in full. Throughout the time the government had a claim against the debtor, the debtor had no counterclaim against the government. Only after the government's

claim had been extinguished by payment in full did the debtor's claim for violation of the stay arise. It is conceptually impossible for the debtor to have any *counter* claim against the government, let alone a *compulsory* one, when the government has *no* claim against the debtor. *See In re Cowart*, 128 B.R. 492, 497 (Bankr.S.D.Ga. 1990). Thus, even if *Price* is correct on its facts (and there is contrary authority, *see e.g. In re Davis*, 136 B.R. 414 (E.D.Va. 1992); *In re Academy Answering Service, Inc.*, 100 B.R. 327 (N.D.Ohio 1989)), the Court declines to apply it to the factual situation of *Bulson*.

 Section 106(b), allowing offsets, does not require that a debtor's claim against the government be a compulsory counterclaim, but it does, like section 106(a), contemplate that the government have *some* claim against the debtor against which the setoff can be made. *See United States v. McPeck*, 910 F.2d 509 (8th Cir. 1990) (comparing and contrasting the subsections); *Cowart*, 128 B.R. at 497; *c.f. In re Davis*, *supra* (allowing offset, but not affirmative recovery, when plan was still pending). In this case, the United States' claim against the Debtor was paid in full before the Debtor's claim arose. There remains no claim by the IRS against which the Debtor can offset. Any monetary judgment would not translate into a reduction in what the Debtor owes, but would have to come as affirmative recovery from the United States treasury. Thus, Section 106(b), like 106(a), does not waive the government's sovereign immunity to the Debtor's action for monetary relief under the Code.

The Court must therefore conclude that the Debtor's claims for monetary relief under Section 362(h) against the United States are barred by sovereign immunity.

*Recovery of Litigation Costs under the Internal Revenue Code*

 There is, however, another potentially applicable waiver of sovereign immunity, which allows an award of attorney fees and other litigation costs to aggrieved taxpayers. This provision, found in the Internal Revenue Code, provides:

(a) In general.—In any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, the prevailing party may be awarded a judgment or a settlement for—

(1) reasonable administrative costs incurred in connection with such administrative proceeding within the Internal Revenue Service, and

(2) reasonable litigation costs incurred in connection with such court proceeding.

26 U.S.C. section 7430. Reasonable litigation costs are defined to include court costs and "reasonable fees paid or incurred for the services of attorneys in connection with the court proceeding," (with a general $75 per hour cap). Section 7430(c)(1). To be eligible for an award under this section, the party must exhaust its administrative remedies within the Internal Revenue Service, must establish the position of the United States in the proceeding was not substantially justified, and must substantially prevail with respect to the most significant issues or set of issues presented. Section 7430(b)(1) and (c)(4)(A).

There is dispute over whether it is within a bankruptcy court's core jurisdiction to make an award under this provision, *see In re Brickell Investment Corp.*, 922 F.2d 696 (11th Cir.1991) (no); *In re Chambers*, 131 B.R. 818 (Bankr.N.D.Ill.1991) (yes), and there are several factual issues which might prevent the Debtor from recovering under this provision, such as whether the Debtor exhausted her administrative remedies before bringing suit, and whether the Debtor (whose counsel appears to be provided through a union sponsored program) has "paid or incurred" any litigation costs, *c.f. United States v. McPherson*, 840 F.2d 244 (4th Cir.1988) (attorney appearing pro se not entitled to attorney fee award). (Indeed, the complaint as it stands may not state a claim under this provision, but the Court assumes, for the purpose of this order, that with leave to amend, the Debtor could state a claim). The Court, however,

need not reach these issues, because the Court concludes that the "position of the United States", as defined in this provision, is limited to its position taken in this litigation, which has been substantially justified.

■ There has been disagreement among the circuits on the question of whether the focus under this section is limited to the government's position after litigation is commenced, or if the government's prelitigation position may also be considered. *See Harrison v. C.I.R.*, 854 F.2d 263, 265 n. 3 (7th Cir.1988), *cert. denied*, 489 U.S. 1053, 109 S.Ct. 1313, 103 L.Ed.2d 582 (1989) (noting split in authorities, but not taking position). In an apparent attempt to clarify matters, the section was amended in 1986 to add a definition of "position of the United States", which included administrative action or inaction only after the District Counsel became involved. *See Sher v. C.I.R.*, 861 F.2d 131, 134 (5th Cir.1988) (quoting and interpreting definition). The definition was amended in 1988 to read:

(A) the position taken by the United States in a judicial proceeding to which subsection (a) applies, and

(B) the position taken in an administrative proceeding to which subsection (a) applies as of the earlier of—

(i) the date of the receipt by the taxpayer of the notice of the decision of the Internal Revenue Service Office of Appeals, or

(ii) the date of the notice of deficiency.

26 U.S.C. section 7430(c)(7). "If neither [of the dates of subsection (B) ] is applicable, the position of the United States is that taken in the litigation." *See* H.R.Conf.Rep. No. 100–1104 at 226, 100th Cong.2d Sess. (1988), *reprinted in* 1988 U.S.C.C.A.N. 4515, 5048, 5286; 34 Am.Jur.2d, *Federal Taxation*, para. 9234. "Administrative proceeding" is defined as "any procedure or action before the Internal Revenue Service." Section 7430(c)(5).

Thus, subsection (B) sets points in the administrative process to determine or collect tax liabilities after which the IRS is held accountable for ensuring that its positions are substantially justified. Both the 1986 and 1988 formulations contemplate that in earlier phases, errors might be made that result in positions without substantial justification, but by the time the proceeding progresses to a certain point, someone within the IRS with sufficient authority is expected to assess the case and correct such errors. Thus, Congress clearly evidenced its intent not to hold the IRS liable for an unjustified position held only in the early stages of a controversy before this point in reached.

In this case, the Debtor's liability to the IRS for 1983 taxes had been determined by this Court (subject to downward modification if the Debtor's appeal had succeeded), and had been paid in full through her Chapter 13 plan. The computer error initiated a new action for which the two dates of 7430(c)(7)(B) either did not apply or had not occurred (and if they did apply but had not occurred, that would suggest that the Debtor had not exhausted her administrative remedies before coming to court). From the time this litigation was commenced, the government has admitted its errors, promptly returned the withheld refund with interest, corrected its computer error, and ceased any further collection efforts. Because the government's position in this litigation has been entirely reasonable, and thus "substantially justified", the Debtor is not entitled to an award under 26 U.S.C. section 7430.

The IRS's seeming inability to control its computers, demonstrated by this case and too many other cases presenting similar scenarios, cannot be excused, but neither can it be sanctioned through monetary relief under 11 U.S.C. section 362(h) in the absence of a waiver of sovereign immunity. Because the government's litigation conduct has been reasonable and justified, the Debtor cannot recover litigation costs under 26 U.S.C. 7430. The Court therefore finds that the government is entitled to dismissal of the Debtor's monetary claims.

*Injunctive Relief*

■ The Court agrees with the government that the need for injunctive relief has been mooted by the IRS's return of the

refund, its correction of its computer error, and its ceasing all further collection attempts. The IRS remains bound by the automatic stay, 11 U.S.C. section 362(a), until discharge is entered, at which time the discharge injunction, 11 U.S.C. section 524(a), will apply. Adding additional injunctive relief at this point and under these circumstances would serve no purpose. The Court will therefore dismiss the Debtor's injunctive claims as moot.

*Conclusion*

Because the Court concludes that both the Debtor's monetary and litigation costs, claims are barred by sovereign immunity and her injunctive claims are moot, the government is entitled to dismissal of this case.

The Court therefore GRANTS the United States' Motion to Dismiss and ORDERS this case dismissed.

SO ORDERED.