In re Roland G. FINGERS, Debtor.

Roland G. FINGERS, Plaintiff,

v.

UNITED STATES of America, DEPARTMENT OF TREASURY, INTERNAL REVENUE SERVICE, and State of California Franchise Tax Board, Defendants.

Bankruptcy No. 89–02143–H7.
Adv. No. 91–90597–H7.

United States Bankruptcy Court,
S.D. California.

Jan. 5, 1993.

Jeffrey D. Schreiber, Rothlisberger & Schreiber, Solana Beach, CA, Harold E. Wolfe, Jr., West Palm Beach, FL, for plaintiff/debtor.

George N. Harris, Jr., U.S. Dept. of Justice, Tax Div., Washington, DC, for U.S.

## MEMORANDUM DECISION

JOHN J. HARGROVE, Bankruptcy Judge.

Chapter 7 debtor, Roland G. Fingers ("Fingers") filed a motion for summary judgment and moved for sanctions against the United States of America, Department of the Treasury, Internal Revenue Service ("IRS") for violation of the automatic stay. The IRS moved for retroactive relief from stay. At the June 22, 1992 hearing, the court denied retroactive relief from stay and took the sanctions issue under submission. An order was entered on July 16, 1992, denying retroactive relief from stay and has become final.

This court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334 and § 157 and General Order No. 312–D of the United States District Court, Southern District of California. This is a core proceeding pursuant to § 157(b)(2)(G).

## FACTS

The facts of this case are relatively simple and straight forward. On January 9, 1987, Fingers petitioned the United States Tax Court ("Tax Court") for a redetermination of his 1981 and 1982 federal income tax liability. The tax case subsequently settled and the Tax Court entered a stipulated decision reflecting tax liabilities for 1981 totalling $1,565.00 and for 1982 totalling $74,902.00. The Tax Court's stipulated decision became final on March 20, 1989.

On March 23, 1989, three days after the Tax Court Decision became final, Fingers filed a Chapter 7 bankruptcy.[1] The IRS admitted that it was named as a creditor in the bankruptcy case and that it received notice of the filing.

On April 10, 1989, approximately three weeks after Fingers filed, the IRS assessed the 1981 and 1982 tax liability despite its awareness of the pending bankruptcy. The improper assessment went unchallenged during the bankruptcy and almost a year later, on April 6, 1990, Fingers received his discharge. On April 15, 1990, Fingers filed tax refund claims for the pre-petition tax years 1984 through 1989.

On August 22, 1991, Fingers commenced this adversary proceeding which initially sought a determination that the 1982 federal income taxes were dischargeable under § 523(a)(1) and for a determination of the tax debt amount. The IRS moved to dismiss or, in the alternative, for summary judgment on the grounds that the taxes in question were nondischargeable and that Fingers' 1982 tax liability was not subject to redetermination by the bankruptcy

court. Subsequently, the IRS withdrew its motion.

With the adversary case still pending, on February 24, 1992, the IRS applied a portion of Fingers' tax overpayments for the years 1984 through 1989 against the 1981 and 1982 tax liabilities. On April 13, 1992, Fingers moved for summary judgment requesting this court to hold that the tax assessment made against Fingers on April 10, 1989, was void. On April 22, 1992, Fingers filed a motion for sanctions under § 362(h). On May 15, 1992, the IRS moved for retroactive relief from stay as to the April 10, 1989, assessment.

## DISCUSSION

### A. RETROACTIVE RELIEF FROM STAY.

■ Under § 362, the stay is effective against all entities and all acts. *In re Fuller*, 134 B.R. 945, 947 (9th Cir.BAP 1992). It is undisputed that the IRS's tax assessment on April 10, 1989, violated the Bankruptcy Code's automatic stay provision. 11 U.S.C. § 362(a)(6). Violations of the automatic stay are void. *In re Schwartz*, 954 F.2d 569, 571 (9th Cir.1992). Section 362(d)(1), however, empowers the court to grant relief from the automatic stay by "terminating, annulling, modifying, or conditioning it." *Algeran, Inc. v. Advance Ross Corp.*, 759 F.2d 1421 (9th Cir. 1985). Thus, a creditor can seek retroactive relief to validate an otherwise void act.

■ Equitable principles may justify the retroactive relief from stay, but any equitable exception to the automatic stay should be narrow and applied only in extreme circumstances. *In re Shamblin*, 890 F.2d 123, 126 (9th Cir.1989). To support the policy of giving the debtor a breathing spell, the courts should be especially hesitant to validate acts committed during the pendency of the stay. *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir.1984).

1. The IRS was required by law to make a valid tax assessment within sixty days after the Tax Court decision became final. The bankruptcy tolled the sixty day statute of limitations giving the IRS an additional sixty day period to assess the taxes after the debtor received his discharge. 26 U.S.C. § 6503.

■ The IRS contends several factors justify retroactive relief in this case. First, the IRS argues that the assessment had no effect on the bankruptcy proceeding. The IRS notes that it did not file a claim in the no asset Chapter 7 bankruptcy estate and only seeks to collect nondischargeable tax liabilities that were inadvertently assessed in violation of the automatic stay. Despite the assessment, the IRS claims that although the ultimate legal effect would be to create a lien on the taxpayer's postpetition property, there were no new rights created against estate property and no real or possible impact upon the bankruptcy proceeding.

The IRS contends that the equities weigh in its favor as well. Specifically, the IRS asserts that the assessment did not interfere with the orderly administration of the bankruptcy case, while on the other hand, if retroactive relief is not granted the debtor will receive a windfall by being relieved of an otherwise nondischargeable debt. The IRS also urges the court to consider the strong public policy of protecting the public fisc.

Despite the IRS's contentions, this case does not involve the kind of extreme circumstances that warrant granting retroactive relief from stay as contemplated by the *Shamblin* court. The IRS received notice of the bankruptcy and therefore easily could have sought relief from stay before assessing the tax. Moreover, the IRS took no action whatsoever after the assessment to petition the bankruptcy court for an order lifting the stay and validating the assessment. Rather, the IRS simply waited for the debtor to respond to the improper assessment, and approximately two and a half years later, requests retroactive relief from the bankruptcy court for the first time.

The fact that the IRS filed no formal proof of claim is likewise unpersuasive. Typically the IRS would decide not to file a claim where there are few, if any, assets in the estate and where the tax is nondischargeable under 11 U.S.C. § 523.

Finally, the IRS had a second opportunity to make a valid assessment after the debtor was discharged. Had the IRS been following its own internal method of monitoring bankruptcy cases, it would have been aware of the debtor's discharge on April 6, 1990, giving it another window of opportunity to make a valid assessment. 26 U.S.C. § 6503. The Internal Revenue Manual provides that field offices:

> [M]onitor any case on appeal that is involved in a bankruptcy proceeding in order to make the assessment as soon as one of the three events set forth in 11 U.S.C. § 362(c) occurs. This monitoring should take place at least once every 30 days.

§ 5483.21(8) and subsections (35)(13) and (10). Thus, the court concluded at the June 22, 1992 hearing, that the IRS was not entitled to retroactive relief from stay as to the April 10, 1989 assessment.

The court notes that the setting aside of the tax assessment does not determine a taxpayer's liability for unpaid taxes, for the assessment does not create the liability. *See Bull v. United States*, 295 U.S. 247, 259, 55 S.Ct. 695, 699, 79 L.Ed. 1421 (1935); *United States v. Latham*, 754 F.2d 747, 750 (7th Cir.1985); *Jenkins v. Smith*, 99 F.2d 827 (2d Cir.1938). Accordingly, the validity of the IRS assessments may not affect the amount of the IRS's general unsecured claim.[2]

**B.  SANCTIONS.**

Fingers also requested this court to assess sanctions under 11 U.S.C. § 362(h) against the IRS in an amount equal to attorneys' fees, accountants' fees and costs incurred by the him in defending this action.

Section 362(h) states:

> (h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in

---

**2.**  The IRS may have a claim entitled to priority under § 507(a)(7), but this issue is not before the court.

**590**

appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(h).

■ The Ninth Circuit has defined the word "willful" as used in § 362(h):

A "willful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded.

*Goichman v. Bloom,* 875 F.2d 224, 227 (9th Cir.1989). As it is undisputed that the IRS had notice of the bankruptcy case, it necessarily follows that the government willfully violated the automatic stay by making the assessment during the pending bankruptcy. *See In re Pinkstaff,* 974 F.2d 113, 115 (9th Cir.1992) *citing Carroll v. Tri–Growth Centre City, Ltd.,* 903 F.2d 1266, 1272 (9th Cir.1990).

Moreover, the automatic stay enjoins the enforcement of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Property of the estate includes all legal and equitable interests of the debtor wherever located. The scope of what constitutes property of the estate is broadly construed. 11 U.S.C. § 541(a). Consequently, when Fingers became entitled to the refunds for pre-petition tax years, those monies became estate property protected by the automatic stay.

It is only reasonable to assume that the IRS must have been aware of Fingers' potential refund well before offsetting the 1981 and 1982 liabilities in February of 1992; Fingers filed for the tax refund in April 1990. The refund in question totalled over $362,198.00 and could be refunded only after a complete audit of Fingers' refund claim tax returns and submission of the audit results to the Secretary to the Congressional Joint Committee on Taxation who then decided whether the refund

would be granted. The audit alone lasted over fifteen months. It would be reasonable, therefore, to assume the IRS would investigate the status of the refunds before offsetting the 1981 and 1982 liabilities. Finally, the IRS has since moved to reopen the case on the grounds that the tax refunds for the pre-petition tax years 1984 through 1989 were estate property. Accordingly, the court finds that the IRS willfully violated the stay with respect to the post-petition offset.

■ Despite admitting to knowing about Fingers' bankruptcy, the IRS argues that it is not liable in damages to Fingers because it did not waive its sovereign immunity under § 106(a). The court disagrees.

A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

11 U.S.C. § 106(a). Under the terms of § 106(a), the waiver applies whenever the governmental unit has a claim against the estate and the estate's claim against the governmental unit "arose out of the same transaction or occurrence out of which such governmental unit's claim arose." *In re Town and Country Home Nursing Servs., Inc.,* 112 B.R. 329, 333 (9th Cir.BAP 1990) *aff'd* 963 F.2d 1146 (9th Cir.1992); *In re Pinkstaff,* 974 F.2d 113, 115 (9th Cir.1992).

The IRS contends that some of the elements under § 106(a) are not met. First, the IRS argues since it has not filed a proof of claim, the first element is not met. Second, the IRS contends that both the second and third element are not met because Fingers' claim against the IRS for improper collection efforts belongs to him, in his individual capacity and, therefore, is not estate property.

■ The Ninth Circuit has concluded that under § 106(a) waivers do not necessarily require the filing of a formal proof of claim. *In re Town and Country Home Nursing Services, Inc.,* 963 F.2d 1146, 1150 (9th Cir.1992).

Section 101(4) defines a claim as including

> right to payment, whether or not such right is reduced to judgement, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. . . .

The IRS admittedly asserted its right to payment for the 1981 and 1982 tax liabilities against the debtor both during the bankruptcy by assessing the tax and post-petition by offset. The IRS argues, however, that its actions were not the functional equivalent of filing a proof of claim because it relied on the debtor's schedules and believed it was collecting nondischargeable debts from the debtor's individual assets after the conclusion of the bankruptcy.

█ Nonetheless, a party's good faith belief that it has a right to property is irrelevant when deciding whether the act was "willful" or whether compensation must be awarded. *Goichman v. Bloom*, 875 F.2d 224, 227 (9th Cir.1989). Likewise, the IRS's reliance on the debtor's schedules is immaterial to the court's determination as to whether or not its actions in asserting its right to payment for the tax liabilities is the functional equivalent of filing a claim. What is applicable is the fact that the IRS took action to collect the tax liability by assessing the tax during the pending bankruptcy and in total disregard for the automatic stay. Also applicable is the IRS's post-petition action in offsetting the debtor's pre-petition refunds against the debtor's pre-petition tax liabilities. Both acts evidence the IRS's intent to hold the debtor liable.

The court concludes that the IRS's actions in assessing the tax during the bankruptcy and in enforcing post-petition payment of the 1981 and 1982 tax liabilities by offsetting those amounts against pre-petition tax refunds are the functional equivalent of filing a claim. As the *Town and Country* court noted "[t]o hold otherwise would enable the government to achieve by self-help what it could not accomplish through the procedures of the bankruptcy court, i.e., retain its immunity while extracting payment from the estate." *Id.* at 1153. The threshold requirement in § 106(a) of the existence of a governmental "claim" against the debtor is therefore satisfied.

█ The IRS's argument that the second and third elements of § 106(a) are also unpersuasive. In cases with virtually identical facts, the courts have unanimously concluded that the debtor has a compulsory counterclaim when the IRS's claim arises from the debtor's failure to pay pre-petition taxes and the debtor's claim arises pursuant to the attempt by the IRS to collect taxes owed by debtor post-petition. *In re Pinkstaff*, 974 F.2d 113 (9th Cir.1992); *In re Bulson*, 117 B.R. 537, 541 (9th Cir.BAP 1990) *aff'd* 974 F.2d 1341 (9th Cir.1992).

Here, the IRS's claim arose out of the debtor's failure to pay pre-petition taxes. The debtor's claim arises from both the IRS's attempt to assess taxes during the bankruptcy and its attempt to collect taxes by offset post-petition. The assessment made during the pending bankruptcy was an assessment made against the debtor and it would have been up to the debtor, not Finger's individually, to challenge the improper assessment. Similarly, the debtor has a claim against the IRS for its post-petition action in applying a portion of the debtor's tax overpayments against the 1981 and 1982 tax liabilities. The court, therefore, concludes that the IRS has waived its sovereign immunity under § 106(a) entitling Fingers to an award of his actually incurred reasonable attorneys' fees.

█ The court takes judicial notice of the attorney and accountant time sheets filed in relation to the IRS's motion to reopen the case. The court finds that the services of Gregory C. Hess, C.P.A., are unrelated to the instant motions for summary judgment and sanctions and therefore his time is disallowed in its entirety.

Harold E. Wolfe has been Fingers tax attorney since the inception of this case. The total time recorded for attorney Wolfe in the adversary case amounts to over three hundred and seven hours at $250.00 per hour and total $76,825.00. The time records reflect that the bulk of attorney Wolfe's time in this adversary was spent

on mostly tax related issues which are not compensable as damages under § 362(h). Further, Wolfe's time records indicate numerous entries that were lumped together making it impossible for the court to analyze the reasonableness of the fees. The time records also indicate that Wolfe, who is experienced in the tax area, spent a vast amount of time researching bankruptcy issues that is beyond the realm of reasonableness for experienced bankruptcy counsel who charge the same rate per hour as Wolfe. These entries indicate that Wolfe does not appear experienced in bankruptcy given that both the facts and the Ninth Circuit law related to the issues in this case were relatively simple. Accordingly, the court concludes attorney Wolfe is entitled to fees in the amount of $8,187.50: 4 hours for researching issues related to the violation of automatic stay and sanctions; 3 hours for drafting and finalizing motions for summary judgment and sanctions; 21 hours for travel time to and from Florida and for attending the June 22, 1992 hearing; 1.75 hours for consultation and preparation for hearing with co-counsel Jeffrey D. Schreiber on 6/21/92; and 3.0 hours for drafting and finalizing findings of fact and conclusions of law.

Attorney Jeffrey D. Schreiber has acted as co-counsel to attorney Wolfe since April of 1992. The total time recorded for attorney Schreiber amounts to 22 hours at $200.00 per hour and total $4,412.00. Many of Schreiber's time entries reflect a duplication of effort between Wolfe and Schreiber. For example, both attorney Schreiber and attorney Wolfe attended the June 22, 1992 hearing, when one attorney would suffice. Moreover, attorney Schreiber reviewed a considerable amount of Wolfe's work including the motion for summary judgment and the findings of fact and conclusions of law. Finally, some of Schreiber's entries were likewise not related to the instant motions. Thus, the court concludes that Schreiber is entitled to fees in the amount of $1350.00: 2 hours in relation to the motion for summary judgment and the motion for sanctions; 1 hour attending hearing to continue the summary judgment motion on 5/19/92; 1 hour for

drafting the notice of deemed admissions; 1.75 hours for consultation and preparation for hearing on 6/21/92; and 1 hour for reviewing findings of fact and conclusions of law and drafting notice of lodgment for same.

Costs in the amount of $1500 are allowed.

## CONCLUSION

This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. Counsel for the movant is directed to file with this court an order regarding the issue of sanctions only in conformance with this Memorandum Decision within ten (10) days from the date of entry hereof.