In re Roland G. FINGERS, Debtor.

UNITED STATES of America,
Appellant/Cross–Appellee,

v.

Roland G. FINGERS, Appellee/Cross–
Appellant.

No. 93–328–G/R.
Bankruptcy No. 89–02143–H7.
Adv. No. 91–90597–H7.

United States District Court,
S.D. California.

July 8, 1994.

Harold E. Wolfe, Jr., Harold E. Wolfe, Jr., P.A., West Palm Beach, FL, and Jeffrey D. Schreiber, Carlsbad, CA, for Roland G. Fingers.

George N. Harris, Jr., Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for U.S.

## MEMORANDUM DECISION AFFIRMING IN PART AND REMANDING IN PART BANKRUPTCY COURT'S DECISION

RHOADES, District Judge.

This action is a direct appeal from a final order of the Bankruptcy Court for the Southern District of California, and jurisdiction is conferred upon the United States District Court by 28 U.S.C. § 158(a). The United States initially appealed from such final order, and the appellee/cross appellant brought a cross-appeal. For the reasons given below, the bankruptcy court's decision is affirmed in part and remanded in part.[1]

### *SUMMARY OF DECISION*

This Court affirms the following bankruptcy court rulings: (1) Fingers was a proper party to bring an action under 11 U.S.C. § 362(h) for violation of the automatic stay; (2) Fingers sustained injuries giving rise to damages under 11 U.S.C. § 362(h); (3) the IRS' assessment of the tax and seizure of the tax refunds both violated bankruptcy's automatic stay; (4) the IRS waived its sovereign immunity under 11 U.S.C. § 106(a); (5) attorneys' fees may be awarded in excess of a $75.00 hourly rate; and (6) the bankruptcy

court's Order of February 18, 1993 directing that the money sanctions remitted directly to Fingers' attorneys be deemed paid by the debtor himself.

This Court remands the bankruptcy court's ruling that Fingers' counsel and accountant incurred unreasonable fees for more specific findings. The bankruptcy court is directed to articulate specifically its grounds for determining the amount of attorneys' and accountant's time and costs in the adversary proceeding that flowed as a consequence of automatic stay violations. Moreover, the court is directed not to isolate bankruptcy issues from tax issues. Finally, the court is directed to determine any fees resulting from the instant appeal utilizing the same lodestar factors considered in determining the attorneys' and accountant's fee award in the underlying adversary proceeding.

Finally, this Court holds that pursuant to 26 U.S.C. §§ 6503(h) and 6503(a)(1), the IRS failed to timely assess the tax liability for the 1981 and 1982 tax years; therefore, although the 1981 and 1982 taxes were nondischargeable pursuant to 11 U.S.C. §§ 523(a)(1)(A) and 507(a)(7)(A)(iii), they were uncollectible as a matter of law due to expiration of the limitations period on tax assessments.

### *FACTUAL BACKGROUND*

On January 9, 1987 Roland Fingers petitioned the tax court for a redetermination of his 1981 and 1982 federal income tax liability. The tax case subsequently settled, and the tax court entered a stipulation decision reflecting tax liabilities for 1981 totalling $1,565.00 and for 1982 totalling $74,902.00. The tax court's stipulated decision became final on March 20, 1989.

Three days later, on March 23, 1989, Fingers filed a Chapter 7 bankruptcy. The IRS admitted that it was named as a creditor in the bankruptcy case and that it received notice of the filing. Nonetheless, on April 10, 1989, the IRS assessed the 1981 and 1982 tax liability despite its awareness of the pending bankruptcy. The improper assess-

---

1. Pursuant to Southern District of California Local Rule 7.1(d)(1) and Fed.R.Bankr.P. 8012(3), this Court finds this appeal suitable for decision without oral argument.

ment went unchallenged during the bankruptcy and almost a year later, on April 6, 1990, Fingers received his discharge. On April 15, 1990, Fingers filed tax refund claims for the pre-petition tax years 1984 through 1989.

On August 22, 1991, following the reopening of the bankruptcy estate, Fingers filed an adversary proceeding seeking a determination from the bankruptcy court that his 1982 income tax liability had been discharged, or alternatively, a determination of that tax liability. On July 14, 1992, Fingers filed an amended adversary complaint alleging that both his 1981 and 1982 tax debts were discharged and that the IRS had violated the automatic stay when it issued tax assessments against him. The amended complaint sought, among other things, damages under 11 U.S.C. § 362(h).

## ISSUES ON APPEAL

### APPEAL BY THE UNITED STATES

(1) Whether Fingers had standing to bring an action for violation of the automatic stay

(2) Whether Fingers alleged injury sufficient to give rise to damages

(3) Whether the automatic stay terminated upon entry of the discharge

(4) Whether the United States waived its sovereign immunity under 11 U.S.C. § 106(a)

(5) Whether 26 U.S.C. § 7430 limits an attorneys' fees award under 11 U.S.C. § 362(h) to a maximum $75.00 hourly rate

(6) Whether money sanctions remitted directly to Fingers' attorneys may be "deemed paid" by the debtor himself

### CROSS–APPEAL BY FINGERS

(1) Whether professional fees incurred on tax issues related to automatic stay violations are compensable under 11 U.S.C. § 362(h)

(2) Whether the bankruptcy court erred by finding that Fingers incurred unreasonable professional fees in his bankruptcy case

## DISCUSSION

### A. STANDARD OF APPELLATE REVIEW

The district court sits as an appellate court when a direct appeal is taken from a final order of the bankruptcy court. 28 U.S.C. § 1334(a). In the Ninth Circuit, the bankruptcy court's findings of fact are reviewed for clear error, and the conclusions of law are reviewed de novo. *In re Eastport Assoc.*, 935 F.2d 1071, 1079 (9th Cir.1991). Mixed questions of law and fact are reviewed de novo. *In re Wade*, 115 B.R. 222, 225 (9th Cir. BAP 1990), *aff'd*, 948 F.2d 1122 (9th Cir.1991). Statutory interpretation is reviewed de novo. *Trustees of the Amalgamated Ins. Fund v. Geltman Indus., Inc.*, 784 F.2d 926, 929 (9th Cir.1986). The appropriateness of a sanction is reviewed for abuse of discretion. *In re Taylor*, 884 F.2d 478 (9th Cir.1989).

### B. FINGERS WAS A PROPER PARTY TO BRING AN ACTION UNDER 11 U.S.C. § 362(h) FOR VIOLATION OF THE AUTOMATIC STAY

The appellant United States argues that the appellee/cross-appellant Roland Fingers was not a proper party to bring an action for sanctions under 11 U.S.C. § 362(h) for violation of the automatic stay. The U.S. Supreme Court has set forth the test for standing in *Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984):

A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.

*Id.* at 751, 104 S.Ct. at 3324 (citations omitted).

In the instant case, the bankruptcy court found that the IRS made two specific violations of the automatic stay: (1) assessing tax during bankruptcy in violation of the automatic stay under 11 U.S.C. § 362(a)(6); and (2) enforcing post-petition payment of the 1981 and 1982 void tax liability by offsetting those amounts against pre-petition tax refunds. *In re Fingers*, 148 B.R. 586, 591 (Bankr.S.D.Cal.1993). Despite the fact that the 1981 and 1982 tax liability was void and

uncollectible since it was made in violation of bankruptcy's automatic stay and since the statute of limitations on tax assessments had subsequently expired, the IRS nonetheless attempted to hold Fingers personally liable for that tax liability. Consequently, the ensuing adversary proceeding constituted Fingers' defense against the IRS' attempts to hold him personally liable for a void and uncollectible tax liability stemming from an automatic stay violation which would affect his post-bankruptcy financial condition (e.g., through tax liens). If the tax was ultimately found to be valid, it could have been collected from Fingers post-bankruptcy.

The Government argues that Fingers is not a party in interest with respect to the post-petition assets because in a chapter 7 proceeding (unlike in a chapter 11 case where the debtor-in-possession does retain an interest in the reorganization estate property), the creation of a bankruptcy estate by the filing of a petition extinguishes the debtor's interest in property that becomes "estate property." However, various courts have espoused the following general rule:

> [S]ince the bankrupt is normally insolvent, he is considered to have no interest in how his assets are distributed among his creditors and is held not to be a party in interest. However, when it appears that, if the contested claims are disallowed, there may be a surplus of assets to be returned to the bankrupt, the bankrupt is considered to have standing to contest the claim.

*Willemain v. Kivitz,* 764 F.2d 1019 (4th Cir. 1985) (citing *Kapp v. Naturelle, Inc.,* 611 F.2d 703, 706–07 (8th Cir.1979); *In re Woodmar Realty Co.,* 241 F.2d 768, 770–71 (7th Cir.1957); *In re Silverman,* 10 B.R. 734, 735 (Bankr.S.D.N.Y.1981), *aff'd,* 37 B.R. 200, 201 (S.D.N.Y.1982); *In re Roberts,* 20 B.R. 914, 916–17 (Bankr.E.D.N.Y.1982); *In re Lapointe,* 39 B.R. 80 (Bankr.W.D.Ky.1984)).

 Following that general rule, because Fingers' attorneys' and accountant's fees, which comprised the injury and damages in the instant case, were directly traceable to the IRS' attempts to hold Fingers personally liable post-bankruptcy for a tax liability assessed in violation of bankruptcy's automatic

stay, Fingers has standing to bring an action under 11 U.S.C. § 362(h). Moreover, courts have held that an individual debtor may sue a creditor for a willful violation of the automatic stay: (1) after bankruptcy proceedings have terminated; and (2) in the district court rather than the bankruptcy court. *Price v. Rochford,* 947 F.2d 829, 831 (7th Cir.1991); *Martin–Trigona v. Champion Fed. Sav. & Loan Ass'n,* 892 F.2d 575, 577 (7th Cir.1989). This could not occur if the right to commence a section 362(h) action vested solely in the bankruptcy trustee rather than in an individual debtor.

The United States erroneously relies on *In re Wright,* 156 B.R. 549 (Bankr.N.D.Ill.1992) to support its argument that Fingers has no standing to bring a section 362(h) action. In that case, the court ruled that Wright lacked standing to seek damages from the IRS for lost business revenues since the monies due to Wright were property of the bankruptcy estate under 11 U.S.C § 541(a) as opposed to Wright's personal property. By contrast, in the case at bar, Fingers was defending himself personally against a tax liability which could have been collected from him post-bankruptcy. As the bankruptcy court noted, the IRS was attempting to "hold the debtor [personally] liable." *In re Fingers,* 148 B.R. at 591. Thus, whereas Wright was alleging that he incurred damages due to deprivation of funds in violation of bankruptcy's automatic stay where the funds belonged to the bankruptcy estate, Fingers was attempting to thwart the IRS' attempts to hold him personally liable post-bankruptcy for tax liability assessed in violation of the automatic stay.

For the foregoing reasons, this Court affirms the bankruptcy court's ruling that Fingers was a proper party to bring an action under 11 U.S.C. § 362(h) for violation of the automatic stay.

## C. FINGERS SUSTAINED INJURIES GIVING RISE TO DAMAGES UNDER 11 U.S.C. § 362(h)

Title 11 U.S.C. § 362(h) provides:

An individual injured by any willful violation of a stay provided by this section shall

recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

The Ninth Circuit has defined the word "willful" as used in section 362(h):

A "willful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded.

*Goichman v. Bloom,* 875 F.2d 224, 227 (9th Cir.1989).

In the instant case, because it is undisputed that the IRS had notice of the bankruptcy case, it necessarily follows that the government willfully violated the automatic stay by making the assessment during the pending bankruptcy. Therefore, pursuant to section 362(h), Fingers is entitled to costs and attorneys' fees resulting from the IRS' automatic stay violations. Fingers remains personally liable for his attorneys' and accountant's fees incurred in the adversary proceeding due to the IRS' efforts to collect void and unenforceable taxes.

For the foregoing reasons, this Court affirms the bankruptcy court's ruling that Fingers sustained injuries giving rise to damages under 11 U.S.C. § 362(h).

### D. THE IRS' ASSESSMENT OF THE TAX AND SEIZURE OF THE TAX REFUNDS BOTH VIOLATED BANKRUPTCY'S AUTOMATIC STAY

The Government argues that each separate breach of the automatic stay should be bifurcated and that damages should be assigned separately to each. The Government further argues that damages under 11 U.S.C. § 362(h) cease upon termination of the automatic stay. This Court rejects both arguments.

Under the Internal Revenue Code, a valid tax assessment is a prerequisite to tax collection. *See* 26 U.S.C. §§ 6201(d), 6203, 6215(a) and 6303(a). Thus, had the IRS never made the original tax assessment during bankruptcy's pendency (first stay violation), it would have had no basis under the Internal Revenue Code to apply a portion of the overpayments for the years 1984 through 1989 against the 1981 and 1982 tax liabilities (second stay violation). Therefore, as a result of the IRS' first stay violation, Fingers sustained damages in the adversary proceeding in defending himself personally against the original tax assessment.

The Government argues that if damages are incurred as a result of clear violations of the automatic stay, those damages are only compensable if incurred while the bankruptcy estate is still open. However, the Ninth Circuit has held that an individual injured by willful automatic stay violations shall recover damages clearly traceable to such stay violations whether or not those damages are incurred before or after the automatic stay terminates under 11 U.S.C. § 362(c). *See, e.g., In re Bulson,* 117 B.R. 537, 538 (9th Cir. BAP 1990), *aff'd,* 974 F.2d 1341 (9th Cir.1992).

The Government also asserts that with respect to the seizure of the tax refunds (second stay violation), the automatic stay terminated prior to such seizure, and therefore, damages are not awardable under section 362(h) for that second stay violation. However, this analysis focuses solely on section 362(c)(2) and ignores section 362(c)(1).

Title 11 U.S.C. § 362(c) provides:

(c) Except as provided in subsections (d), (e) and (f) of this section—

(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate; and

(2) the stay of any other act under subsection (a) of this section continues until the earliest of—

(A) the time the case is closed;

(B) the time the case is dismissed; or

(C) if the case is a case under chapter 7 of this title concerning an individual or

a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied.

Congress described the purpose of section 362(c) and the interrelationship of paragraphs (1) and (2):

> Subsection (c) of section 362 specifies the duration of the automatic stay. Paragraph (1) terminates a stay of an act against property of the estate, such as by sale, abandonment, or exemption. It does not terminate the stay against property of the debtor if the property leaves the estate and goes to the debtor. Paragraph (2) terminates the stay of any other act on the earliest of the time the case is closed, the time the case is dismissed, or the time a discharge is granted or denied (unless the debtor is a corporation or partnership in a Chapter 7 case.)

S.Rep. No. 989, 95th Cong., 2d Sess. 5 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5838; H.R.Rep. No. 598, 95th Cong., 2d Sess. 5 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6299.

Various bankruptcy courts have also held that section 362(c)(1) extends the automatic stay against property of the estate until that property ceases to belong to the estate whereas section 362(c)(2) extends the stay as to other types of acts only until the estate is closed, dismissed or discharged as granted or denied. *See, e.g., In re Swenson*, 130 B.R. 99, 100 (Bankr.D.Utah 1991); *In re Cornist*, 7 B.R. 118, 120 (Bankr.S.D.Cal.1980).

In the instant case, pursuant to section 362(c)(1), because the tax refunds were bankruptcy estate property, the automatic stay remained in effect against that estate property until it was no longer property of the estate. Therefore, the IRS violated the automatic stay when it seized the tax refunds.

For the foregoing reasons, this Court affirms the bankruptcy court's ruling that IRS' assessment of the tax and seizure of the tax refunds both violated bankruptcy's automatic stay.

### E. THE IRS WAIVED ITS SOVEREIGN IMMUNITY UNDER 11 U.S.C. § 106(a)

In 11 U.S.C. § 106(a), Congress has waived the sovereign immunity of a governmental unit when the following conditions are met: (1) the governmental unit has a claim against the bankruptcy estate; (2) the estate has a claim against the governmental unit; (3) the estate's claim against the governmental unit is property of the estate; and (4) the two claims arise from the same transaction or occurrence, i.e., the estate's claim is a compulsory counterclaim to the governmental unit's claim against the estate. *In re Germaine*, 152 B.R. 619, 623–24 (9th Cir. BAP 1993). Each of these elements must be present for a court to find that the governmental unit has waived its sovereign immunity under section 106(a). *In re Solis*, 137 B.R. 121, 125–26 (Bankr.S.D.N.Y.1992).

#### 1. *The IRS Made The Functional Equivalent Of Filing A Proof Of Claim*

In its Memorandum Decision in *In re Fingers*, the bankruptcy court stated:

> The court concludes that the IRS' actions in assessing the tax during the bankruptcy and in enforcing post-petition payment of the 1981 and 1982 tax liabilities by offsetting those amounts against pre-petition tax refunds are the functional equivalent of filing a claim. As the *In re Town and Country [Home Nursing Services, Inc.*, 963 F.2d 1146, 1153 (9th Cir.1991) ] Court noted "to hold otherwise would enable the government to achieve by self-help what it could not accomplish through the procedures of the bankruptcy court, i.e., retain its immunity while extracting payment from the estate." The threshold requirement in Section 106(a) of the existence of a governmental "claim" against the debtor is therefore satisfied.

*In re Fingers*, 148 B.R. at 591.

The bankruptcy court specifically based its ruling on *In re Town and Country* where the Ninth Circuit held that a post-petition offset of bankruptcy estate property was the functional equivalent of filing a proof of claim in the bankruptcy estate, thereby waiving sovereign immunity under 11 U.S.C. § 106(a). *In re Town and Country*, 963 F.2d at 1153. As the court in *In re Taylor*, 148

B.R. 361 (S.D.Ga.1992), confirmed, either (1) the existence of a claim in the estate or (2) an IRS seizure or setoff of a tax refund which is estate property, is the functional equivalent of filing a claim. *See also In re Boldman,* 148 B.R. 874 (Bankr.C.D.Ill.1993), *aff'd,* 157 B.R. 412 (C.D.Ill.1993).

The Government cites *In re Germaine* in an attempt to distinguish the holding of *In re Town and Country* from the instant case. Although the Government only partially quotes *In re Germaine* in support of the proposition that the IRS' actions were not the functional equivalent of filing a proof of claim, the full context of the quote does not support the Government's position:

Where, as in this case, the governmental entity does not assert a claim against the estate or attempt to collect from estate assets, but merely asserts a right to payment from the debtor after discharge and from assets that are no longer part of the estate, the purposes underlying section 106(a) are not implicated. The IRS did not seek or obtain a distribution from the estate with respect to those claims that are related to the debtor's claim against the IRS. Rather, it merely sought collection from the debtor and from assets which had revested in the debtor.

*In re Germaine,* 152 B.R. at 624.

■ In the instant case, the IRS did in fact attempt to collect payment from the bankruptcy estate assets, i.e., the tax refunds. Furthermore, the IRS presumably knew that those tax refunds were estate property since the United States itself moved to reopen the estate shortly after it lost its claim for retroactive annulment stay relief in an attempt to validate its tax claims personally against Fingers. Therefore, *In re Germaine,* when applied to the facts of the case at bar, does not conflict with the holding of *In re Town and Country* that a post-petition offset of bankruptcy estate property is the functional equivalent of filing a proof of claim in the bankruptcy estate.

**2. *The Estate Has A Claim Against The IRS Which Is Property Of The Estate***

■ The second and third elements necessary for the Government's immunity to be waived under section 106(a) require that the bankruptcy estate have a claim against the governmental unit and that the estate's claim be property of the estate. *In re Solis,* 137 B.R. at 126. In its Memorandum Decision, the bankruptcy court held:

The IRS' argument that the second and third elements of Section 106(a) are also unpersuasive. In cases with virtually identical facts, the courts have unanimously concluded that the debtor has a compulsory counterclaim when the IRS' claim arises from the debtor's failure to pay pre-petition taxes and the debtor's claim arises pursuant to the attempt by the IRS to collect taxes owed by debtor post-petition. *In re Pinkstaff,* 974 F.2d 113 (9th Cir. 1992); *In re Bulson,* 117 B.R. 537, 541 (9th Cir. BAP 1990), *aff'd,* 974 F.2d 1341 (9th Cir.1992).

Here, the IRS' claim arose out of the debtor's failure to pay pre-petition taxes. The debtor's claim arises from both the IRS' attempt to assess taxes during the bankruptcy and its attempt to collect taxes by offset post-petition. The assessment made during the pending bankruptcy was an assessment made against the debtor and it would have been up to the debtor, not Fingers individually, to challenge the improper assessment. Similarly, the debtor has a claim against the IRS for its post-petition action in applying a portion of the debtor's tax overpayments against the 1981 and 1982 tax liabilities. The court, therefore, concludes that the IRS has waived its sovereign immunity under Section 106(a) entitling Fingers to an award of his actually incurred reasonable attorneys' fees.

*In re Fingers,* 148 B.R. at 591.

The United States argues that the estate has neither a claim against the governmental unit and, even if the estate does have a claim against the governmental unit, the estate's claim is not property of the estate. However, such an argument is premised on a very narrow reading of 11 U.S.C. § 541(a)(1)

which has been uniformly rejected by courts.[2]

As the bankruptcy court correctly noted, Fingers' claim arises from both the IRS' attempt to assess taxes and its attempt to collect taxes by offset post-petition. Thus, the estate expended attorneys' fees in defending against improper assessment and improper post-petition offset, thereby preserving bankruptcy estate assets. Consequently, any attorneys' fees incurred in pursuing the sanctions action are considered an equitable interest of the debtor and property as of the commencement of the case since they, if paid from the estate, would diminish assets otherwise available to the debtor at the commencement of the case to satisfy other debts. Therefore, in non-chapter 13 cases, courts have construed 11 U.S.C. § 541 to relate all such damages back to the case's commencement. *See, e.g., In re University Medical Center,* 973 F.2d 1065, 1086 (3d Cir.1992); *In re Boldman,* 148 B.R. 874, 876 (Bankr. C.D.Ill.1993), *aff'd,* 157 B.R. 412 (C.D.Ill. 1993); *In re Solis,* 137 B.R. 121, 126 (Bankr. S.D.N.Y.1992); *In re Price,* 130 B.R. 259, 269–70 (N.D.Ill.1991). The court in *In re University Medical Center* stated:

> UMC's [the debtor's] claim for attorneys' fees and costs qualifies as property of the estate under Bankruptcy Code section 541. Any attorneys' fees incurred as a result of the Department's violation of the automatic stay, if imposed upon UMC rather than HHS, would diminish the assets UMC could devote to the payments of prior debts.

*Id.* at 1086 (citations omitted).

Accordingly, because the estate has a claim against the IRS for recovery of the tax refunds and the estate's claim against the governmental unit is property of the estate (i.e., the tax refunds), the second and third elements of 11 U.S.C. § 106(a) are satisfied.

■ The fourth element of section 106(a) is that the claim against the government must arise from the same transaction or occurrence as the government's claim. In order to determine whether two claims arise out of the same transaction or occurrence,

the Ninth Circuit applies the "logical relationship" test. *In re Bulson,* 117 B.R. 537, 541 (9th Cir. BAP 1990) (citing *Pochiro v. Prudential Ins. Co. of America,* 827 F.2d 1246, 1249 (9th Cir.1987)). Under this test, the court must analyze whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all issues should be resolved in one lawsuit. *Id.* A logical relationship exists when "the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant." *In re Bulson,* 117 B.R. at 541 (quoting *In re Lile,* 96 B.R. 81, 85 (Bankr.S.D.Texas 1989)). Further, the same transaction or occurrence should be liberally interpreted under Federal Rule of Civil Procedure 13(a). *Id.*

■ In the instant case, the IRS' claim against the debtor arises from the debtor's failure to pay taxes owed. The debtor's claim arises pursuant to the attempt by the IRS to collect these taxes owed by the debtor. The basis of both cases revolve around the aggregate core of facts regarding the debtor's unpaid taxes. Under these circumstances, the essential facts relating to the tax claim itself are logically related to the government's collection activities. As a result, the fourth element of 11 U.S.C. § 106(a) is satisfied.

For the foregoing reasons, this Court affirms the bankruptcy court's ruling that the IRS waived its sovereign immunity under 11 U.S.C. § 106(a).

### F. TITLE 26 U.S.C. § 7430 DOES NOT LIMIT AN ATTORNEYS' FEES AWARD UNDER 11 U.S.C. § 362(h) TO A MAXIMUM $75.00 HOURLY RATE

The United States argues that the $75.00 hourly rate for attorneys' fees prescribed in 26 U.S.C. § 7430(c)(1)(B)(iii) limits the hour-

---

**2.** Title 11 U.S.C. § 541(a)(1) states, in relevant part, that the estate encompasses "all legal or equitable interests of the debtor in property as of the commencement of the case."

ly award of attorneys' fees under 11 U.S.C. § 362(h). Therefore, the United States contends that the hourly rate of the attorneys' fees awarded by the bankruptcy court should, at most, have been $75.00 per hour. The United States argues that the reason for the $75.00 per hour limitation is that Congress has shown a clear legislative intent to limit any recovery of attorneys fees against the United States to $75.00 per hour. The Government asserts that Congress has provided two specific waivers of sovereign immunity to enable successful litigants to recover their attorneys' fees from the United States: (1) 26 U.S.C. § 7430(a) provides the necessary waiver of immunity for the recovery of fees "in connection with the determination, collection, or refund of any tax, interest, or penalty" under Title 26; and (2) 28 U.S.C. § 2412(a) provides a waiver of immunity for "the prevailing party in any civil action brought by or against the United States or any agency ..." thereof.

▉ However, as Fingers points out, the bankruptcy court ordered the award of attorneys fees in the instant case pursuant to 11 U.S.C. § 362(h), not 26 U.S.C. § 7430 or 28 U.S.C. § 2412. Furthermore, 26 U.S.C. § 7430 does not preempt or limit an award of attorneys' fees under 11 U.S.C. § 362(h) to the $75.00 per hour limit. As the bankruptcy court explained in *In re Price*, 143 B.R. 190 (Bankr.N.D.Ill.1992):

> USA further argues that at most, the Debtors' estate is entitled to recover $75.00 per hour for the necessary, nonduplicative services rendered by the Applicant. USA maintains that 26 U.S.C. § 7430 and 28 U.S.C. § 2412 set forth the standard fee rate in federal tax litigation. The Court rejects this contention and follows the well reasoned opinion of Judge Marovich in *Taborski v. IRS*, 141 B.R. 959 (N.D.Ill.1992). There the district court, in affirming another judge of this court, held that 26 U.S.C. § 7430 does not prevent a bankruptcy court from awarding costs and attorneys' fees pursuant to section 362(h) for a violation of the stay. *Id.* 141 B.R. at 967. Moreover, 26 U.S.C. § 7430 and 28 U.S.C. § 2412 do not control the award of fees in bankruptcy cases; the relevant

> Bankruptcy Code provisions control. This matter is not federal tax litigation grounded on those statutes. Rather, it is a contested motion on fees incidental to a Chapter 13 bankruptcy reorganization involving a violation of the automatic stay of the Bankruptcy Code.

*In re Price*, 143 B.R. at 193.

As the *In re Price* Court noted, the principal focal element is whether the attorneys' fees arise from a violation of bankruptcy's automatic stay in a bankruptcy context rather than from federal tax litigation. The issue before this Court is the sanctions award for violation of the automatic stay. Thus, all tax issues relating to sanctions are subservient to automatic stay violation issues. Since the attorneys' fees were awarded for automatic stay violations in a bankruptcy context, the relevant provisions of the Bankruptcy Code (i.e., 11 U.S.C. § 362(h)) control and are not preempted by 26 U.S.C. § 7430.

For the foregoing reasons, this Court affirms the bankruptcy court's award of attorneys' fees in excess of a $75.00 hourly rate.

### G. MONEY SANCTIONS REMITTED DIRECTLY TO A DEBTOR'S ATTORNEYS MAY BE DEEMED PAID BY THE DEBTOR HIMSELF

In its Order of February 18, 1993, the bankruptcy court directed that the sanctions it awarded against the Government were payable to the estate as compensation for actual damages it sustained. The bankruptcy court further directed that the estate's damages were to be paid directly to Fingers' attorneys but were to be deemed paid by Fingers.

Support for the proposition that money sanctions remitted directly to a debtor's attorneys from the bankruptcy estate may be deemed paid by the debtor himself is found in *Mueller v. Commissioner*, 496 F.2d 899 (5th Cir.1974), where the court held that the taxpayer/bankrupt was entitled to deduct amounts paid by the bankruptcy trustee out of the bankruptcy estate's property. Specifically, the court stated:

We conclude that the tax court erred in not allowing a deduction for business expenses carried back to 1966 by the taxpayer in an amount equal to that actually paid out as dividends by the trustees in bankruptcy to those persons whose claims would have been allowed as business expenses if paid during 1966.

*Id.* at 903.

Subsequent to *Mueller,* the law in this area was statutorily codified under 26 U.S.C. § 1398 of the Internal Revenue Code, which takes precedence over the Bankruptcy Code. 11 U.S.C. § 346(a); *Official Committee of Unsecured Creditors of D.F. Antonelli, Jr. v. United States,* 70 AFTR2d 92–6180, 6182, 1992 WL 403097 (Bankr.D.Md.1992). Therefore, the Court's analysis must also focus on section 1398 of the Internal Revenue Code.

With respect to bankruptcy, under 26 U.S.C. § 1398(e)(3), the Code provides only that the determination of whether or not any deductible item paid by the bankruptcy estate is allowed as either a deduction to the bankruptcy estate or the debtor/taxpayer shall be made as if the amount were paid or incurred by the debtor and as if the debtor were still engaged in the activities the debtor was engaged in before the case's commencement. The Committee Reports to P.L. 96–589 which enacted tax rules relating to bankruptcy cases for individuals notes only that the aforesaid rule under section 1398(e)(3) was "... intended to insure that no particular item of deduction of credit can be allowed to both the debtor and the estate." S.Rep. No. 1035, 96th Cong., 2d Sess. (1980), *reprinted in* 1980 U.S.C.C.A.N. 7017. Section 1398(e)(3) therefore implies that either the debtor or the estate may take an item of deduction as long as it is not allowed as a deduction to both parties.

██ It is reasonable to infer that the bankruptcy court made a factual finding that the estate was not entitled to a deduction under 26 U.S.C. § 1398(e)(3) and that the deduction should be available to Fingers if he could use it under the principles of *Mueller.*[3] Presumably, the bankruptcy court based it

ruling on the fact that although the sanctions award to Jeffrey Schreiber, Esq. and Harold Wolfe, Esq. would be paid through the bankruptcy estate, such fees were in reality attributable to Fingers personally in his attempts to defend himself against automatic stay violations. Since Fingers would be personally liable to Schreiber and Wolfe for attorneys' fees for services rendered in the adversary proceeding, the court's finding can be construed as a factual finding that the estate was not entitled to the deduction for payment of attorneys' fees under 26 U.S.C. § 212(3). Pursuant to 11 U.S.C. § 505(a)(1), the bankruptcy court had jurisdiction to determine the amount of any tax or tax deduction allowable to the bankruptcy estate.

██ Fingers agrees with the United States that the bankruptcy court's determination did not determine the debtor's tax liability with respect to the deduction for legal fees under 26 U.S.C. § 212(3); rather, the court merely made a factual finding pursuant to 26 U.S.C. § 1398(e)(3) that the bankruptcy estate was not entitled to the deduction, and instead the attorneys' fees would be deemed paid by Fingers—a factual finding that could later support a tax deduction in another forum under the principles of *Mueller.*

For the foregoing reasons, this Court affirms the bankruptcy court's Order of February 18, 1993 directing that the money sanctions remitted directly to Fingers' attorneys be deemed paid by the debtor himself.

## H. THE BANKRUPTCY COURT'S FINDING THAT FINGERS' COUNSEL AND ACCOUNTANT INCURRED UNREASONABLE FEES IS REMANDED

### 1. *Professional Fees Incurred On Tax Issues Related To Automatic Stay Violations Are Compensable Under 11 U.S.C. § 362(h)*

The bankruptcy court held that time expended by Harold Wolfe, Esq. and Gregory Hess, C.P.A. were not compensable under 11 U.S.C. § 362(h) to the extent attributable to

---

3. Pursuant to 26 U.S.C. § 212(3), ordinary and necessary attorneys' fees paid during a taxable year in connection with the determination, collection, or refund of tax may be deductible.

tax related issues. The court therefore found that only bankruptcy related issues were compensable as damages under section 362(h).

In interpreting section 362(h), the Ninth Circuit Bankruptcy Appellate Panel in *In re Pace*, 159 B.R. 890 (9th Cir. BAP 1993), stated:

> An award of attorneys' fees is appropriate where a debtor must resort to the Court to enforce his or her rights in consequence of a violation of the automatic stay. *In re Stucka*, 77 B.R. 777, 784 (Bankr.C.D.Cal. 1987). Accordingly, it is well established that the attorneys' fees and costs arising from a violation of the automatic stay is recoverable under section 362(h). *In re Stainton*, 139 B.R. 232, 234 (9th Cir. BAP 1992); *In re Bradford*, 112 B.R. 347, 354 (9th Cir. BAP 1990).

*In re Pace*, 159 B.R. at 900–01.

By using the words "shall recover," Congress intended that the award of actual damages, costs and attorneys' fees is "mandatory and not within the discretion of the Court." *In re Sansone*, 99 B.R. 981, 987 (Bankr. C.D.Cal.1989) (citations omitted).

As Fingers contends, the tax related fees sought under 11 U.S.C. § 362(h) relate to the adversary proceeding and are sought to the extent fees in the adversary proceeding resulted in actual damages sustained from willful automatic stay violations. Specifically, in the adversary proceeding, the IRS attempted to collect from Fingers a void and unenforceable tax. Consequently, Fingers was required to personally defend himself in the adversary proceeding against the IRS' tax collection efforts premised on automatic stay violations.

In its July 16, 1992 Findings of Fact and Conclusions of Law, the bankruptcy court stated:

> Based upon the foregoing, the Internal Revenue Service is attempting to collect a void and unenforceable tax based upon a tax assessment made during bankruptcy's pendency which was void ab initio under *In re Schwartz*, [954 F.2d 569 (9th Cir. 1992) ], and is now uncollectible since the

Statute of Limitations on tax assessments has expired.

Conclusion of Law # 1.N.

Furthermore, in its Memorandum Decision the bankruptcy court asserted:

> What is applicable is the fact that the IRS took action to collect the tax liability by assessing the tax during the pending bankruptcy and in total disregard for the automatic stay. Also applicable is the IRS' post-petition action in offsetting the debtor's pre-petition refunds against the debtor's pre-petition tax liabilities. Both acts evidence the IRS' intention to hold the debtor liable.

*In re Fingers*, 148 B.R. at 591.

■ To defend personally against the imposition of tax liability, Fingers had to demonstrate that: (1) the tax liability was void for automatic stay violations under the principles of *In re Schwartz*; (2) retroactive annulment relief from the stay was not warranted; (3) following closure of the bankruptcy case, the Internal Revenue Code's statute of limitations on tax assessments had expired; and (4) the IRS seized the tax refunds in violation of the automatic stay. These elements required a calculation, monitoring and review of the application of the tax refunds as well as IRS procedures regarding refund seizure. Consequently, the tax related issues researched by Wolfe and Hess dealt with, among other things: (1) the expiration of the statute of limitations on tax assessments (26 U.S.C. §§ 6501, 6503); (2) calculation of the date of expiration of the statute of limitations on tax assessments (26 U.S.C. §§ 6213, 6215, 6501, 7481); and (3) calculation of the amount of a tax refund withheld by the IRS. All these tax related issues bear upon the automatic stay's breach since a valid tax assessment was a prerequisite for holding Fingers personally liable for the tax.

■ Specifically with respect to tax issues being compensable under 11 U.S.C. § 362(h), *In re Rhodes*, 155 B.R. 491 (W.D.Ark.1993), *aff'g*, 147 B.R. 492 (Bankr. W.D.Ark.1992), is instructive. In that case, the IRS filed a tax lien against a debtor in violation of bankruptcy's automatic stay, and

despite knowledge of the stay, refused to remove the tax lien. Subsequently, the debtor entered into a real estate contract for the sale of the debtor's homestead which was an "exempt asset" under 11 U.S.C. § 522. The purchaser refused to close on the transaction unless the tax lien was removed. The debtor's attorney and accountant thereafter expended time researching the tax law and IRS procedures relating to the tax lien removal as well as negotiating with the IRS regarding lien removal. The IRS thereafter removed the lien only after it was paid a specified portion of that tax lien despite the pending bankruptcy and the automatic stay. The court concluded that the tax related matters for which the debtor's attorney and accountant expended time were compensable under 11 U.S.C. § 362(h). *Id.* at 495. Accordingly, section 362(h) supports a damage award equal to the damages proximately caused by the automatic stay's breach even if those damages are related to tax matters. As a result, the bankruptcy court erred in holding that as a matter of law tax related matters were not compensable under 11 U.S.C. § 362(h).

2. *The Bankruptcy Court Failed To Articulate The Grounds For Finding That Fingers' Counsel and Accountant Incurred Unreasonable Fees*

The Ninth Circuit test for an award of monetary damages under 11 U.S.C. § 362(h) is stated in *In re Stainton,* 139 B.R. 232 (9th Cir. BAP 1992):

> Section 362(h) expressly states that "an individual injured by any willful violation of a stay ... shall recover actual damages, including costs and attorneys' fees...." 11 U.S.C. § 362(h). The plain language of the statute requires that the injured party be awarded the entire amount of actual damages reasonably incurred as a result of a violation of the automatic stay.

*In re Stainton,* 139 B.R. at 235.

Accordingly, in the instant case, if attorneys' and accountant's fees were reasonably incurred as a result of the automatic stay's violation, they should have been compensable under 11 U.S.C. § 362(h).

In its Memorandum Decision, the bankruptcy court stated that "the facts and the Ninth Circuit law related to the issues in this case were relatively simple." *In re Fingers,* 148 B.R. at 592. Therefore, the bankruptcy court concluded that Harold Wolfe "spent a vast amount of time researching bankruptcy issues that is beyond the realm of reasonableness." *Id.* Additionally, the court found that much of the time expended by Jeffrey Schreiber duplicated the efforts of Wolfe and that some of the time Schreiber expended was not related to the 11 U.S.C. § 362(h) motion. As a result, the court did not fully credit all attorneys' and accountant's time expended in litigating the section 362(h) motion.

Although the Ninth Circuit law was in fact relatively simple at the time the bankruptcy court issued its Memorandum Decision on January 5, 1993, the law was in a state of flux prior to the issuance of three Ninth Circuit decisions promulgated and published only near the case's end, and on which the bankruptcy court largely relied in issuing its decision: (1) *In re Pinkstaff,* 974 F.2d 113 (9th Cir.1992), *rev'g,* 121 B.R. 596 (Bankr.D.Ore. 1990); (2) *In re Bulson,* 974 F.2d 1341 (9th Cir.1992), *aff'g,* 117 B.R. 537 (9th Cir. BAP 1990); and (3) *In re Town and Country Home Nursing Serv. Inc.,* 963 F.2d 1146 (9th Cir.1992). Prior to the issuance of these decisions, the Ninth Circuit law regarding waiver of sovereign immunity by the United States under 11 U.S.C. § 362(h) was governed by *In re Pearson,* 917 F.2d 1215 (9th Cir.1990) and *In re Pinkstaff,* 121 B.R. 596 (Bankr.D.Ore.1990). In *In re Pearson,* the Ninth Circuit held that governmental units are immune to damages actions arising from violations of the automatic stay. *Id.* at 1216. At the June 22, 1992 hearing on the debtor's sanctions motion, the bankruptcy court stated that *In re Pearson* appeared to be the law of the Ninth Circuit with respect to damage awards against the United States under section 362(h), and thus the court was reluctant to award sanctions under 11 U.S.C. § 362(h) in the instant case. (R. at 55–57.) Despite the bankruptcy court's inclination to rule that there had been no waiver of sovereign immunity under *In re Pearson* at the June 22, 1992 hearing, the court granted the debtor's

ore tenus motion to allow the parties to brief this issue further in light of the complicated law in this area. The debtor thereafter filed "Plaintiff's Supplemental Memorandum in Support of Motion for Sanctions against the Internal Revenue Service" on July 13, 1992, again without the benefit of the Ninth Circuit decisions, *In re Pinkstaff, In re Bulson,* and *In re Town and Country,* which were not issued until September 1, 1992 (and not published and bound until sometime thereafter).

Various circuit court, district court and bankruptcy court decisions for many given jurisdictions outside of the Ninth Circuit during 1990–1992 were relatively evenly split as to whether the United States waives its sovereign immunity defense in section 362(h) cases. *See, e.g., Hoffman v. Connecticut Dep't of Income Maintenance,* 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989); *United States v. Nordic Village, Inc.,* —— U.S. ——, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *In re Pinkstaff,* 121 B.R. 596 (Bankr.D.Ore. 1990), *rev'd,* 974 F.2d 113 (9th Cir.1992); *Matter of Toti,* 141 B.R. 126 (Bankr. E.D.Mich.1992); *In re Long,* 142 B.R. 234 (Bankr.S.D. Ohio 1992); *In re University Medical Center,* 973 F.2d 1065 (3d Cir.1992); *In re Rebel Coal Co.,* 944 F.2d 320 (6th Cir.1991); *In re Fernandez,* 132 B.R. 775 (M.D.Fla.1991); *In re Price,* 130 B.R. 259 (N.D.Ill.1991); *In re Solis,* 137 B.R. 121 (Bankr.S.D.N.Y.1992); *In re Dillon,* 148 B.R. 852 (Bankr.E.D.Ten.1992). It was not until the *In re Pinkstaff* and *In re Bulson* decisions that this issue was resolved in the Ninth Circuit. Additionally, the trend of recently published cases indicates the majority of courts now hold that the IRS waives its claim of sovereign immunity under 11 U.S.C. § 362(h) where the IRS asserted an informal claim in the bankruptcy estate or had a cause of action to do so. *See, e.g., In re Boldman,* 148 B.R. 874 (Bankr.C.D.Ill.1993); *In re Taylor,* 148 B.R. 361 (S.D.Ga.1992).

■ As noted, the bankruptcy court failed to fully credit all attorneys' and accountant's time expended in litigating the section 362(h) motion in the instant case. A bankruptcy court's award of attorneys' fees will not be disturbed "absent an abuse of discretion or an erroneous application of the law." *In re Bradford,* 112 B.R. 347, 351 (9th Cir. BAP 1990) (citing *In re International*

*Environmental Dynamics, Inc.,* 718 F.2d 322, 326 (9th Cir.1983)). Under the abuse of discretion standard, a reviewing court cannot reverse "unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *In re Bradford,* 112 B.R. at 351 (citing *Mission Indians v. American Management & Amusement, Inc.,* 824 F.2d 710, 724 (9th Cir.1987); *In re Tong Seae (U.S.A.), Inc.,* 81 B.R. 593, 597 (9th Cir. BAP 1988)). In ruling that the law regarding the waiver of sovereign immunity and related issues was relatively simple while the instant case was proceeding during mid–1992, and consequently, in failing to fully credit the debtor's attorneys and accountant with time expenditures, the bankruptcy court failed to articulate explicitly the grounds for its conclusion. Accordingly, this issue is remanded for more specific findings.

As Fingers points out, in addition to arguing the sanctions issue at both the June 22, 1992 and October 6, 1992 hearings before the bankruptcy court, the debtor was required to file several major briefs due to the radically changing area of law, among them: (1) "Response Memorandum to Defendant's Memorandum in Opposition to Plaintiff's Motions for Summary Judgment and for Sanctions" filed June 16, 1992 (21 pages); (2) "Plaintiff's Supplemental Memorandum in Support of Motion for Sanctions Against the Internal Revenue Service" filed on July 13, 1992 (14 pages); and (3) "Plaintiff's Reply Memorandum to Defendant's Supplemental Memorandum in Opposition to Debtor's Motion for Sanctions" filed September 17, 1992 (17 pages). In holding that the research time on bankruptcy issues expended by the debtor's counsel was beyond the realm of reasonableness, the bankruptcy court's Memorandum Decision does not indicate whether it considered the work expended on these briefs, which were necessitated by the changing area of law.

■ The standard for determining whether attorneys' fees are compensable under 11 U.S.C. § 362(h) is set forth in *In re Price,* 143 B.R. 190 (Bankr.N.D.Ill.1992). In that case, the court held that attorneys' time and costs expended as a consequence of automatic stay violations, including the costs of

an appeal, are compensable under section 362(h), and the IRS may not protest legal fees sought in connection with the ensuing protracted litigation. The court listed twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), which a court may consider in determining the reasonableness of damages: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *In re Price*, 143 B.R. at 192–93 (quoting *Johnson*, 488 F.2d at 717–19); *See also In re Sugarman*, 137 B.R. 391 (Bankr.S.D.Cal.1992); *In re Xebec*, 147 B.R. 518 (9th Cir. BAP 1992). In the instant case, the Memorandum Decision of the bankruptcy court does not indicate whether the court performed an analysis of the twelve lodestar factors normally considered in an attorneys' fee award. Specifically, the ruling does not indicate whether the bankruptcy court considered the novelty of the evolving area of law, which is highlighted by the bankruptcy court's own initial inclination not to award sanctions based on the doctrine of sovereign immunity.[4]

Moreover, it is significant that the "Memorandum of Debtor re Attorneys' Fees and Accountant's Fees" submitted October 26, 1992 at the bankruptcy court's request served as the basis of the court's analysis of the sanctions award even though that Memorandum was not submitted on the sanctions issue. Fingers had opposed reopening the bankruptcy estate because, among other

things, counsel fees and administrative expenses under 11 U.S.C. § 503 would largely deplete much of the estate. (R. at 13–14, 41 and 48, October 6, 1992.) The bankruptcy court thereafter requested that timesheets be submitted for Fingers' attorneys and accountant on the issue of the amount of administrative claims, not the sanctions award. (R. at 53, October 6, 1992.) *See also In re Fingers*, 148 B.R. at 591. Accordingly, Fingers' attorneys and accountant were not able to submit their time sheets in a manner so as to provide the bankruptcy court with a clear breakdown of fees directed specifically to the sanctions issue. Instead, the bankruptcy court made its analysis of the sanctions award based on time sheets submitted for the purpose of demonstrating the potential amount of an administrative claim under 11 U.S.C. § 503.

For the foregoing reasons, this Court remands the bankruptcy court's ruling that Fingers' counsel and accountant incurred unreasonable fees for more specific findings. The bankruptcy court is directed to articulate specifically its grounds for determining the amount of attorneys' and accountant's time and costs in the adversary proceeding that flowed as a consequence of automatic stay violations. Moreover, the court is directed not to isolate bankruptcy issues from tax issues. Finally, the court is directed to determine any fees resulting from the instant appeal utilizing the same lodestar factors considered in determining the attorneys' and accountant's fee award in the underlying adversary proceeding.[5]

## I. THE EFFECT OF 26 U.S.C. §§ 6503(h) AND 6503(a)(1) ON TAX ASSESSMENT AND DISCHARGEABILITY

### 1. *Tax Assessment*

Upon the mailing of a notice of deficiency for income taxes, the period of

---

4. *This Court acknowledges the repetitious nature of the appellee/cross appellant's submitted papers. Counsel for Fingers unnecessarily repeats several arguments throughout the briefs. Such redundancy calls into question the reasonableness of the reported time expenditures. Consequently, in determining the attorneys' and accountant's fees and costs, the bankruptcy court should give special consideration to the following*

lodestar factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; ... and (8) the amount involved and the results obtained.

5. Counsel are directed to make their applications for costs and fees of the instant appeal directly to the bankruptcy court.

limitations on assessment is suspended for ninety (90) days when the notice of deficiency is addressed to a person within the United States, plus an additional sixty (60) days thereafter. 26 U.S.C. §§ 6503(a)(1) and 6213(a). If a taxpayer files a petition in the tax court contesting the proposed deficiency, the period of limitations is suspended until the decision of the tax court becomes final, and for an additional (60) days thereafter. 26 U.S.C. § 6503(a)(1). The tax court's decision becomes final upon the expiration of the time for filing a notice of appeal if no notice is filed. 26 U.S.C. § 7481(a)(1).

With respect to Fingers' tax court case, the decision became final on March 20, 1989. Accordingly, pursuant to 26 U.S.C. § 6503(a)(1), the IRS had sixty (60) days to make the assessments of tax that the tax court determined were owed. However, the sixty-day period for assessment stopped running on March 23, 1989 when Fingers filed a bankruptcy petition. Therefore, at the time Fingers filed his bankruptcy petition, there were fifty-eight (58) days remaining in the period of limitations for assessment.

▮▮▮ Pursuant to 26 U.S.C. § 6503(h), when a taxpayer files a case under Title 11 (Bankruptcy Code), the running of the period of limitations for assessments is suspended for the period during which the IRS is prohibited from making an assessment plus sixty (60) days thereafter. Generally, the IRS is stayed from making an assessment against a debtor until such time as the bankruptcy court grants the debtor a discharge or the bankruptcy case is dismissed. 11 U.S.C. § 362(c). In the instant case, the IRS was prohibited from making an assessment against Fingers until April 6, 1990, the day his discharge was entered.

▮▮▮ Fifty-eight (58) days remained on the limitations period for the IRS to make its tax assessments. This fifty-eight (58) day period must be added to the additional sixty (60) day period granted to the IRS pursuant to 26 U.S.C. § 6503(a)(1) during which tax assessments are permissible following entry of a bankruptcy Order of Discharge. Since the debtor's Order of Discharge was entered on April 6, 1990, the IRS was statutorily given 118 days (58 + 60 = 118) after April 6, 1990, or until August 2, 1990, to validly assess the tax liability against the debtor, Fingers.

The IRS possesses its own internal method of monitoring bankruptcy cases which is published in the Internal Revenue Manual. *See In re Fingers*, 148 B.R. 586, 589 (Bankr. S.D.Cal.1993). By the Internal Revenue Manual's own dictates, the IRS field office was to monitor each bankruptcy case to ensure that the IRS had "... another window of opportunity to make a valid tax assessment" pursuant to 26 U.S.C. § 6503 following a debtor's bankruptcy discharge. *Id.* The bankruptcy court found that, contrary to the provisions of its own Internal Revenue Manual, the IRS failed to monitor Fingers' bankruptcy case which contributed substantially to the IRS' failure to timely assess the tax liability for the 1981 and 1982 tax years by the required deadline of August 2, 1990. *Id.*

The United States contends that Fingers remained "stealthily silent" while the IRS failed to timely assess the tax liability by August 2, 1990. However, when Fingers learned of the improper assessment on November 5, 1990 (since the IRS did not otherwise inform him of the void assessment made during bankruptcy's pendency or during the "window" period during which assessment was still permissible), he notified the IRS in writing on November 6, 1990 of a potential problem with that tax assessment. His tax counsel wrote IRS Group Chief David Spandle, thereby placing the IRS on written notice of a problem with the tax assessment.

▮▮▮ Unless the IRS otherwise informs a taxpayer, there are only two methods of ascertaining the date of a tax assessment: (1) obtaining a copy of the federal tax lien which normally bears the date of the tax assessment on it; or (2) obtaining a copy of an IRS transcript showing the assessment date. In the instant case, there was no federal tax lien filed before Fingers' counsel called Group Chief David Spandle on November 5, 1990, and no transcript was obtained by either Fingers or his counsel prior to November 5, 1990. Therefore, Fingers and his tax counsel were unaware of the tax assessment made on April 10, 1989 during bankruptcy's pendency

until Fingers' tax counsel discussed the matter with David Spandle on November 5, 1990 after receiving an IRS Notice.

Despite the fact that the tax assessment was made during bankruptcy's pendency in violation of the automatic stay, the IRS took no remedial action to abate or otherwise remedy the tax assessment made in violation of the stay—even after it received written notification on November 6, 1990 by a letter to Group Chief David Spandle. Apparently, the IRS failed to ascertain whether it had even made another tax assessment subsequent to April 10, 1989. In fact, through a Request for Admissions in the adversary proceeding, Fingers was required to establish that the IRS had not made any subsequent tax assessments after entry of the Order of Discharge on April 6, 1990 and the "window" period provided by 26 U.S.C. §§ 6503(h) and 6503(a)(1) by August 2, 1990.

Despite having substantially erred in assessing the tax in violation of bankruptcy's automatic stay, not reassessing the tax following entry of the Order of Discharge during the "window" period provided by 26 U.S.C. §§ 6503(h) and 6503(a)(1), and not otherwise taking any remedial action, the IRS nonetheless could have still sought prompt retroactive annulment relief from bankruptcy's automatic stay pursuant to 11 U.S.C. § 362(d)(1). *See In re Fingers*, 148 B.R. at 588–89. However, the IRS did not move for retroactive annulment relief until after two and one-half years. The bankruptcy court denied the retroactive annulment relief stating:

> The IRS received notice of the bankruptcy and therefore easily could have sought relief from stay before assessing the tax. Moreover, the IRS took no action whatsoever after the assessment to petition the bankruptcy court for an order lifting the stay and validating the assessment. Rather, the IRS simply waited for the debtor to respond to the improper assessment, and approximately two and a half years later, requests retroactive relief from the bankruptcy court for the first time.

*Id.* at 589.

■ Acknowledging the fact that the IRS failed to assess tax liability during the post-

bankruptcy "window" period pursuant to 26 U.S.C. §§ 6503(h) and 6503(a)(1), the adversary proceeding, which was premised upon the IRS' attempts to validate a tax assessment made in violation of bankruptcy's automatic stay, should have come to an end following the Ninth Circuit's promulgation of *In re Schwartz*, 954 F.2d 569 (9th Cir.1992). In that case, the court held that a tax assessment in violation of bankruptcy's automatic stay was absolutely void ab initio and of no legal effect, thereby precluding the IRS from attempting to validate a void tax assessment by claiming that the tax assessment was merely voidable and requesting court relief to validate the assessment. The court in *In re Schwartz* asserted:

> Given the important and fundamental purpose of the automatic stay and the broad debtor protections of the Bankruptcy Code, we find that Congress intended violations of the automatic stay to be void rather than voidable. Nothing in the Code or the legislative history suggests that Congress intended to burden a bankruptcy debtor with an obligation to fight off unlawful claims.

*Id.* at 571–72.

### 2. *Dischargeability*

■ Title 11 U.S.C. § 523(a)(1)(A) provides that a discharge under 11 U.S.C. § 727 does not discharge a debtor from any debt for a tax of the kind specified in 11 U.S.C. § 507(a)(7). Section 507(a)(7)(A)(iii) describes taxes which are not assessed before, but assessable after, the commencement of the case. In the instant case, the tax assessments based on the tax court's decision were not assessed before the commencement of Fingers' bankruptcy proceedings. However, those deficiencies could have been assessed after Fingers' discharge was entered. Therefore, the tax deficiencies were nondischargeable pursuant to 11 U.S.C. §§ 523(a)(1)(A) and 507(a)(7)(A)(iii).

■ However, although the 1981 and 1982 taxes were nondischargeable, they were *uncollectible* as a matter of law due to expiration of the Internal Revenue Code's statute of limitations on tax assessments.

For the foregoing reasons, this Court finds that pursuant to 26 U.S.C. §§ 6503(h) and 6503(a)(1), the IRS failed to timely assess the tax liability for the 1981 and 1982 tax years; therefore, although the 1981 and 1982 taxes were nondischargeable pursuant to 11 U.S.C. §§ 523(a)(1)(A) and 507(a)(7)(A)(iii), they were uncollectible as a matter of law due to the expiration of the limitations period on tax assessments.

IT IS SO ORDERED.